People of the State of Illinois, Plaintiff-Appellee, v. John J. Fultz, Defendant-Appellant.

Gen. No. 51,313.

First District, Fourth Division.

June 5, 1968.

■■■■■■

■■■■■■■■■■■■■

■■■■■■■

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Anthony J. Onesto, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

CHARGE: Armed robbery.*

DEFENSE AT TRIAL: Plea of not guilty.

JUDGMENT: After a trial before the court, defendant was found guilty and sentenced to one to four years in the Illinois State Penitentiary.

POINTS RAISED ON APPEAL:

1) Defendant was not proved guilty beyond a reasonable doubt;

2) State's evidence failed to prove the offense of armed robbery;

---

*Ill Rev Stats 1965, c 38, § 18–1(a). A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force.

Ill Rev Stats 1965, c 38, § 18–2(a). A person commits armed robbery when he violates Section 18–1 while armed with a dangerous weapon. (b) Penalty. A person convicted of armed robbery shall be imprisoned in the penitentiary for any indeterminate term with a minimum of not less than one year.

3) The State erred in questioning the defendant on his failure to produce defense witnesses.

EVIDENCE: The complaining witness, Jackson Gilbert, testified that on October 18, 1965, at about 1:30 p. m., he was in a tavern near 67th Street and Cottage Grove Avenue; he ordered a bottle of beer and paid for it out of a dollar bill; he had $26 in his pocket. At this time the defendant came near his seat in the bar and began talking about a television set; he asked the witness if he would be interested in buying a color set for around $100. When the witness said he would want to see the set, the defendant said if the witness had a car and would drive him home he could see it.

The witness said he would not have the money until after 3:00 p. m.; the defendant said they could go and look at it anyway, so the witness drove them to 71st Street and an alley, as the defendant directed, to a two-flat building which the defendant said he owned. The defendant told the witness to give him the car keys so he could unlock the trunk to put the television set in it; the witness got out of the car, then the defendant said it wouldn't be necessary, so they returned to the car, and the defendant said, "Give me the money." The witness hesitated, and the defendant went to the driver's side of the car, put his hand in his pocket on the right side, and said, "Give me the money." (The witness indicated that the hand in the pocket formed a point.) The witness then gave the defendant a $20 bill and five singles, and the defendant ran.

The witness then drove around to find a policeman and saw a squad car at 67th Street and Cottage Grove; he told the police what had happened, and they said they would follow him in the squad car back to the alley. As they were driving south, the witness noticed a person hiding his head in a cab; the police stopped the cab and found the defendant on the floor with his head covered. When they took him out of the cab he offered to give

back the money he had taken and asked the witness not to press charges. The officer searched the defendant and took a long yellow knife from his person. The police asked the defendant at the police station if he took the money and he said he did.

Officer Alan Schuman testified that on October 18, 1965, he was in his squad car when the complaining witness approached him and told him of the robbery; that he followed the complainant's car in his vehicle, and the complainant pointed out a cab in which the defendant was riding; they stopped the cab and he placed the defendant under arrest. When he searched the defendant he found a knife which was introduced by the State as Exhibit No. 2. Outside the cab the defendant tried to return to the complainant the money he admitted having taken from him—a $20 bill and five ones. The officer testified that the complaining witness told him he believed the defendant had a gun at the time; that he did not see it, but was under the impression that there was a gun held in defendant's pocket.

The defendant testified in his own behalf that he lived in Morgan Park; that he was in the tavern in question when the complaining witness was there; that he was talking to someone else about the television and the complainant said he wanted it. The defendant said he told the complainant he would charge him $50 for the set and Gilbert said he did not have that much with him, but would give him $25 then and $25 when his wife came from work. He said the complainant gave him $25 and they drove to 71st Street and Maryland Avenue; he told the complainant that he had to get the television set from his cousin who lived about seven blocks away, and that when he caught the cab he told the complainant to wait there for him. In response to questioning by his counsel the defendant testified that in "approximately" 1947 he was convicted for auto theft and spent time in

the penitentiary. He said on direct examination that the complainant didn't know he had a knife "or nothing else, my hand was in my pocket, . . ." On cross-examination he said, "I never had my hand in my coat pocket."

██ OPINION: The first question to be discussed is whether or not the evidence introduced is sufficient to prove the defendant guilty beyond a reasonable doubt. The defendant cites People v. Coulson, 13 Ill2d 290, 149 NE2d 96, on the basis that the evidence of the complaining witness was improbable and should not have been believed. In fact, analyzing the evidence in the instant case, it would seem it is the testimony of the defendant which should be regarded as unbelievable. To quote from Coulson, this testimony "taxes the gullibility of the credulous." The defendant testified that the complaining witness had given him the money in the tavern, and that he then went with the complainant in his car to look at the television set; however, instead of going to the place where the set was supposed to be, he went to 71st and Maryland. He then took a cab to 68th and Evans to pick up the set, instead of having the complaining witness drive him there, and was later arrested while in the cab. The evidence of the complaining witness is believable and, in our opinion, was properly accepted by the court. The evidence in the record is sufficient to prove the defendant guilty beyond a reasonable doubt.

██ The defendant also argues that the complaining witness failed to prove that there actually was an armed robbery (as distinguished from a robbery) inasmuch as there was no evidence that Gilbert saw any weapon at the time of the robbery. The police officer, however, testified that when defendant was arrested a search of his pockets produced a yellow-handled knife, and at that time the defendant admitted, in the officer's presence, that he had taken the money and offered to give it back to the complainant, and asked him not to prosecute.

In support of his contention the defendant cites People v. Binion, 80 Ill App2d 130, 225 NE2d 485, which is not at all in point.

■ The defendant argues that the prosecutor erred in asking the defendant if a Mr. Green (the bartender who defendant testified had served the complaining witness) or the tavern owners (who were present when Gilbert allegedly gave defendant $25) were in court, to both of which questions the defendant answered no. No objection was made to the questions, and we do not believe, even if an objection had been made, that the evidence was so prejudicial as to require a reversal.

The case of People v. Smith, 74 Ill App2d 458, 221 NE 2d 68, cited by the defendant, goes far beyond the situation before us and is not applicable.

Finding no error in the record, the judgment of the Circuit Court is affirmed.

Affirmed.

DRUCKER and ENGLISH, JJ., concur.