# Illinois Official Reports

## Appellate Court

---

### *People v. Jackson*, 2016 IL App (1st) 141448

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSHUA JACKSON, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-14-1448 |
| Rule 23 order filed | August 31, 2016 |
| Rule 23 order withdrawn | September 16, 2016 |
| Opinion filed | September 21, 2016 |
| Rehearing denied | September 29, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-920(02); the Hon. Thaddeus L. Wilson, Judge, presiding. |
| Judgment | Affirmed as modified in part and vacated in part. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Emily Filpi, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Christine Cook, and Margaret A. Hayes, Assistant State's Attorneys, of counsel), for the People. |

JUSTICE LAVIN delivered the judgment of the court, with opinion. Presiding Justice Fitzgerald Smith and Justice Mason concurred in the judgment and opinion.

## OPINION

¶ 1    Following a bench trial, defendant Joshua Jackson was convicted of armed robbery with a firearm and aggravated battery with a deadly weapon. He was sentenced to 21 years' imprisonment for armed robbery with a firearm, which included a 15-year enhancement for possessing a firearm during the offense, and 6 years' imprisonment for aggravated battery with a deadly weapon, to be served concurrently. On appeal, defendant asserts that (1) the evidence was insufficient to show that the object used in the offense was a firearm; (2) he is entitled to a new sentencing hearing in light of recent legislation; (3) his sentence was unconstitutional; and (4) the fines, fees, and costs assessed against him must be reduced. We vacate certain fines and order that presentence custody credit be applied against others but affirm the judgment in all other respects.

¶ 2                        I. BACKGROUND

¶ 3    On November 22, 2011, two individuals put a gun to Quintin Kimbrough's back, beat him, and absconded with his backpack. Defendant and codefendant Randy McKnight were subsequently charged with armed robbery with a firearm (720 ILCS 5/18-2(a)(2) (West 2010)), armed robbery with a dangerous weapon (720 ILCS 5/18-2(a)(1) (West 2010)), aggravated battery with a deadly weapon (720 ILCS 5/12-3.05(f)(1) (West 2010)), and aggravated battery on a public way (720 ILCS 5/12-3.05(c) (West 2010)). Defendant, who was 17 years old at the time of the offense, was tried as an adult.[1]

¶ 4    At trial, Kimbrough testified that at about 7:30 p.m. on the night in question, he was walking north on Pulaski when three men approached him. Kimbrough did not recognize them at the time but later identified defendant from a photo array and a physical lineup. When they asked if Kimbrough had any change, he responded that he did not. The three men then crossed the street, but Kimbrough kept an eye on them as they continued walking on Pulaski. After one of the men, who was never identified, turned onto a side street, defendant and codefendant returned to Kimbrough's side of the street.

¶ 5    Pulaski was well-lit from streetlights and automobile headlights. As Kimbrough approached a somewhat darker section of Pulaski, he felt "the long piece of a gun" on his upper back, just above the top of the backpack he was wearing. Kimbrough acknowledged, however, that he had not seen a gun at this point. He quickly said, "You don't have to do anything. I'll give you [*sic*] it to you." Defendant and codefendant told Kimbrough to keep walking and subsequently took his backpack, which contained clothes, an iPod, credit cards, and a couple of dollars. Defendant and codefendant then pushed Kimbrough into a dark area and instructed him not to look back. Despite this instruction, he looked back and was immediately struck in his right eye with the handle of a firearm. Furthermore, he recognized the object as a firearm because he had seen firearms when visiting relatives who hunt.

_____

[1]Codefendant apparently pled guilty to armed robbery with a firearm in exchange for a 10-year

¶ 6       When Kimbrough fell to the ground, defendant and codefendant began kicking and hitting him. After being struck several times, Kimbrough got up and attempted to escape his attackers but was hit in his left eye and knocked to the ground again. Eventually, Kimbrough made his way into the middle of the street, where a bus driver assisted him. Paramedics took Kimbrough to the hospital, where he received treatment for his badly swollen eyes, bruised arms, and bruised back. He ultimately had surgery on both eyes.

¶ 7       Officer Deltoro testified that when he responded to the scene, Kimbrough was "badly battered" and "[h]is face, his eye was swollen, his right eye, bloody, very huge, bad shape." In addition, Kimbrough described his attackers as "[t]hree male blacks, young, somewhere between the ages of 17 to 21 *** but average height, maybe 5-foot-10 to 6 feet, thin."

¶ 8       Several witnesses testified on defendant's behalf. Justin Jackson, defendant's brother, testified that defendant was at school on the day in question. Additionally, Justin, Tamara Boughton, and Danisha Cockrell testified that they, as well as defendant, attended basketball games in the gym until 7 or 8 p.m. Afterward, Justin waited with Cockrell and defendant for a southbound bus, and Boughton crossed the street to wait for a northbound bus. When the southbound bus arrived, defendant and Cockrell boarded it. This was the last time Justin and Boughton saw defendant that night. Justin testified that at no time did he see defendant with a firearm or with codefendant. Additionally, Cockrell testified that she rode the bus with defendant until the Pulaski and Lake stop, where he exited the bus and walked up the stairs to the Green Line train platform.

¶ 9       Defendant testified on his own behalf that he neither robbed nor battered Kimbrough and was never with codefendant on the day in question. Instead, he spent the day at school and subsequently attended basketball games with Justin, Cockrell, and Boughton. Afterward, he took the bus home. Although defendant initially told police that he was at wrestling practice after school that day, the police reminded him that practice had been cancelled, leading defendant to remember that he had been watching basketball instead.

¶ 10      Following closing arguments, the trial court found defendant guilty of all counts and entered a special finding of great bodily harm. The court ultimately sentenced defendant to 21 years' imprisonment for armed robbery with a firearm and 5 years' imprisonment for aggravated battery, to be served concurrently. Defendant's armed robbery sentence included a 15-year enhancement for possession of a firearm.

¶ 11                              II. ANALYSIS
¶ 12                        A. Sufficiency of the Evidence
¶ 13      On appeal, defendant first contends that the evidence was insufficient to support the trial court's finding that the object used during the offense was a firearm. Specifically, defendant argues that Kimbrough lacked the opportunity to identify the object that hit him and was unable to adequately describe it. He also argues that no evidence corroborated Kimbrough's testimony that defendant had a firearm.[2]

¶ 14      When a defendant challenges the sufficiency of the evidence, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime to have been

_____

[2]Defendant has abandoned his alibi defense on appeal.

proven beyond a reasonable doubt. *People v. Belknap*, 2014 IL 117094, ¶ 67. We will not overturn a criminal conviction except in instances where the evidence is so improbable or unsatisfactory as to warrant a reasonable doubt of the defendant's guilt. *People v. Campbell*, 146 Ill. 2d 363, 374 (1992). Because the trial court is better situated to observe the witnesses, that court is entitled to assess their credibility, resolve conflicts in the evidence, and draw reasonable inferences therefrom. *People v. Irvine*, 379 Ill. App. 3d 116, 132 (2008). Thus, we will not substitute the trial court's credibility assessments with our own. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). Furthermore, this deferential standard equally applies to a trier of fact's assessment of a witness's testimony that the defendant had a firearm, even where the witness was unable to accurately describe the weapon. See *People v. Lee*, 376 Ill. App. 3d 951, 956 (2007).

¶ 15        Under section 18-2(a)(2) of the Criminal Code of 1961 (Code), the State must prove that the defendant committed a robbery (720 ILCS 5/18-1 (West 2010)) while he carried a firearm "on or about his or her person or [was] otherwise armed with a firearm." 720 ILCS 5/18-2(a)(2) (West 2010). In addition, section 2-7.5 of the Code (720 ILCS 5/2-7.5 (West 2010)) has adopted the definition of "firearm" found in section 1.1 of the Firearm Owners Identification Card Act: " 'Firearm' means any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas ***." 430 ILCS 65/1.1 (West 2010). The definition excludes certain items, however, such as B-B guns, signaling devices, and antique firearms. *Id.* Under this broad definition, unequivocal testimony that the defendant held a firearm constitutes circumstantial evidence sufficient to show the defendant was armed within the meaning of the statute. *People v. Fields*, 2014 IL App (1st) 110311, ¶¶ 36-37. Similarly, courts have consistently held that eyewitness testimony that the offender possessed a firearm, combined with circumstances under which the witness was able to view the weapon, is sufficient to allow a reasonable inference that the weapon was actually a firearm. *People v. Davis*, 2015 IL App (1st) 121867, ¶ 12; see *People v. Wright*, 2015 IL App (1st) 123496, ¶¶ 74, 76, *appeal allowed*, No. 119561 (Ill. Nov. 25, 2015). Consequently, the State need not present a firearm in order for the trier of fact to find the defendant possessed one. See *People v. Washington*, 2012 IL 107993, ¶ 36; *People v. Clark*, 2015 IL App (3d) 140036, ¶ 24 (holding that in the absence of a recovered firearm, the witnesses' unequivocal testimony that they observed the defendant carrying a firearm was sufficient).

¶ 16        Here, the evidence was sufficient for the trial court to find defendant possessed a firearm. Kimbrough unequivocally testified that when defendant and codefendant approached him from behind, Kimbrough "felt the long piece of a gun" in his back and was told, "Don't turn around, keep walking." While defendant did not verbally threaten to shoot or kill Kimbrough, the trial court could find that defendant implicitly threatened him. See *People v. Toy*, 407 Ill. App. 3d 272, 289 (2011) (finding the evidence sufficient to support aggravated criminal sexual assault with a firearm and attempted armed robbery where a victim testified that the defendant verbally threatened to kill her when he pressed what she believed to be a gun against her head). More importantly, Kimbrough testified that when he turned around to face defendant, "the handle of the gun hit [him] in the eye." See *Wright*, 2015 IL App (1st) 123496, ¶¶ 75-76 (rejecting the defendant's argument that because the witnesses only viewed the handle of the firearm, their testimony was insufficient to show the item was a firearm). Kimbrough's unequivocal testimony identifying the object did not reflect speculation or conjecture. *Cf.*

*People v. Laubscher*, 183 Ill. 2d 330, 335-36 (1998) (observing that "conjecture and speculation" are insufficient); *People v. Ross*, 229 Ill. 2d 255, 277 (2008) (rejecting the subjective approach to determining whether a weapon was "dangerous" under the prior version of the armed robbery statute). Moreover, Kimbrough's identification of the part of the firearm that hit him indicates that he had sufficient opportunity to observe it. Although the trial court could have found that Kimbrough lacked sufficient time to identify the object, the court was not required to make that finding.

¶ 17 We also observe that the record does not support defendant's assertion that Kimbrough was unable to describe the firearm; rather, neither attorney asked whether he could provide additional details. In any event, reviewing courts have upheld trial court determinations that the defendant possessed a firearm even where very little description of the weapon was presented. See *Fields*, 2014 IL App (1st) 110311, ¶ 37 (finding evidence was sufficient where the witness merely described the firearm as black). While reviewing courts have also upheld findings that defendants had firearms where more detail was provided, those cases do not establish a minimum requirement for showing a defendant possessed a firearm. See *Wright*, 2015 IL App (1st) 123496, ¶¶ 7, 9 (finding evidence sufficient where one witness described the firearm as an "automatic, black gun" and a second witness described the firearm as a 9-millimeter pistol); *People v. Malone*, 2012 IL App (1st) 110517, ¶¶ 4, 52 (finding evidence sufficient where video surveillance showed the defendant had a gun in his hand, corroborating witness testimony that the defendant yielded a "black or black and silver" firearm).

¶ 18 Moreover, the trial court could find Kimbrough's familiarity with his family's hunting rifles enhanced his ability to identify the object as a firearm. Although the weapon that hit him may not have been a rifle, this court has found that testimony supported a trial court's finding that the defendant had a firearm even where the witness had no prior experience with any firearm. See *id.* ¶¶ 51-52. Additionally, no evidence suggested that Kimbrough was hit with anything but a firearm. See *Fields*, 2014 IL App (1st) 110311, ¶ 37 (finding "[t]here [was] no evidence suggesting the gun falls within the statutory exception to the general, broad definition of a firearm in the FOID Act"). Finally, we note that the trial court was well aware that no weapon was recovered but implicitly found the lack of physical evidence did not undermine Kimbrough's credibility. We cannot substitute the trial court's credibility determination with our own.

¶ 19 B. New Juvenile Legislation

¶ 20 1. Juvenile Jurisdiction and Transfer

¶ 21 Next, defendant asserts in a supplemental brief that he is entitled to a new sentencing hearing in juvenile court in light of Public Act 99-258 (eff. Jan. 1, 2016), which amended the automatic transfer provision of the Juvenile Court Act of 1987 (Juvenile Act) (705 ILCS 405/5-130 (West 2014)). At the time of the offense, section 5-130 effectively excluded defendants charged with armed robbery with a firearm from juvenile court proceedings. 705 ILCS 405/5-130 (West 2010). Following Public Act 99-258, however, armed robbery with a firearm no longer excludes a defendant from that court. Pub. Act 99-258 (eff. Jan. 1, 2016) (amending 705 ILCS 405/5-130 (West 2014)).

¶ 22 In response, the State contends that Public Act 99-258 does not apply retroactively. Two divisions of the First District of this court recently reached different conclusions in this regard. *People v. Hunter*, 2016 IL App (1st) 141904, ¶ 71; *People v. Patterson*, 2016 IL App (1st)

101573-B, ¶ 15. Even assuming this most recent amendment to section 5-130 applies retroactively, it would not help this defendant because another factor disqualified him from being subject to juvenile proceedings: his age at the time of the offense. In reaching this determination, we begin by considering the impact of Public Act 98-61 (eff. Jan. 1, 2014) on section 5-120. Although the parties have failed to address this statute, section 5-130 is a mere exception to section 5-120.

¶ 23   We review questions of statutory construction *de novo*. *People v. Fiveash*, 2015 IL 117669, ¶ 10. In addition, the cardinal rule of statutory construction is to determine the legislature's intent. *Id.* ¶ 11. To determine whether a statutory amendment is to be applied retroactively, however, we must apply the more specific two-step approach set forth in *Landgraf v. USI Film Products*, 511 U.S. 244 (1994). *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 39 (2001). Pursuant to *Landgraf*, courts must first determine whether the legislature has clearly indicated the amended statute's temporal reach; if so, courts must give such intent effect, absent a constitutional prohibition. *People ex rel. Madigan v. J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 29. If the legislature has not provided the statute's temporal reach, however, courts must proceed to the second step, which requires determining whether applying the statute would involve a retroactive impact. *Commonwealth Edison Co.*, 196 Ill. 2d at 38. If retrospective application would result in a retroactive impact or inequitable consequences, we must presume that the legislature did not intend such an application. *J.T. Einoder, Inc.*, 2015 IL 117193, ¶ 30.

¶ 24   At the time of the offense, section 5-120, the Juvenile Act's exclusive jurisdiction provision, stated, in pertinent part, as follows:

> "Proceedings may be instituted under the provisions of this Article concerning any minor who *prior to the minor's 17th birthday has violated* *** any federal or State law *** and any minor who prior to his or her 18th birthday has violated *** any federal, State, county or municipal law or ordinance classified as a misdemeanor offense. *** *Except as provided in Section[ ] *** 5–130, *** no minor who was under 17 years of age at the time of the alleged offense* may be prosecuted under the criminal laws of this State." (Emphases added.) 705 ILCS 405/5-120 (West 2010).

Thus, unless charged with a misdemeanor, a defendant must be under 17 years old at the time of the offense to be subject to the juvenile court's jurisdiction. Even if a defendant was under 17 years old at that time, he will not be tried as a juvenile if section 5-130 applies. Under section 5-130(a)(1), "[t]he definition of delinquent minor under Section 5–120 of this Article shall not apply to any minor who at the time of an offense was at least 15 years of age and who is charged with: *** armed robbery when the armed robbery was committed with a firearm." 705 ILCS 405/5-130(a)(1) (West 2010).

¶ 25   There is no dispute that defendant was charged with felonies, not misdemeanors. At the time of the offense, defendant was 17 years old, not under 17 years old as required for section 5-120 to apply. Thus, defendant did not fall within the juvenile court's jurisdiction, regardless of section 5-130. Although the exception found in section 5-130 would also have removed him from the juvenile court due to the crime with which he was charged, we need not consider whether the exception to the general rule applies where the general rule is itself inapplicable.

¶ 26   We recognize that after defendant committed this offense, the legislature enacted Public Act 98-61, which amended section 5-120 to include minors who commit felonies before their eighteenth birthday. 705 ILCS 405/5-120 (West 2014). With that said, the amendment contains

a savings clause. *People v. Richardson*, 2015 IL 118255, ¶ 3. Specifically, the amendment to section 5-120 stated, "[t]he changes made to this Section by this amendatory Act of the 98th General Assembly apply to violations or attempted violations committed on or after the effective date of this amendatory Act." 705 ILCS 405/5-120 (West 2014). Thus, the legislature has clearly indicated this amendment's temporal reach: defendants who commit felonies before their eighteenth birthday are subject to juvenile proceedings only if they committed the charged offenses on or after January 1, 2014, the effective date of Public Act 98-61.

¶ 27   Here, defendant's initial brief conceded that the amendment did not apply to him and that he did not fall within juvenile jurisdiction under section 5-120. We agree. The offense at hand occurred well before 2014. Consequently, as a 17-year-old, he was not subject to juvenile proceedings. Because defendant never fell within the juvenile court's jurisdiction pursuant to section 5-120, section 5-130 could not have removed him from that court. Even assuming the changes that Public Act 99-258 made to section 5-130 apply retroactively, defendant would nonetheless have been tried as an adult.

¶ 28                                    2. Juvenile Sentencing

¶ 29   We also reject defendant's contention that he should be resentenced based on the recently enacted section 5-4.5-105 of the Unified Code of Corrections (Pub. Act 99-69 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105)). Pursuant to Public Act 99-69 (eff. Jan. 1, 2016), and Public Act 99-258 (eff. Jan. 1, 2016), our legislature has provided that "[o]n or after the effective date of this amendatory Act of the 99th General Assembly, when a person commits an offense and the person is under 18 years of age at the time of the commission of the offense, the court" must consider specific sentencing factors applicable to juveniles. Pub. Act 99-69 (eff. Jan. 1, 2016) (adding 730 ILCS 5/5-4.5-105). Trial courts also now have discretion to decline to impose firearm enhancements, such as the enhancement applied to defendant's sentence. *Id.*

¶ 30   Even assuming the amendment's prefatory language is not an unambiguous indicator of its temporal reach, this new statute cannot be applied to defendant. Where the statute at issue is silent as to temporal reach, section 4 of the Statute on Statutes controls the first step of the *Landgraf* inquiry. *Caveney v. Bower*, 207 Ill. 2d 82, 91-92 (2003). Section 4 states as follows:

> "No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding. *If any penalty, forfeiture or punishment be mitigated by any provisions of a new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect*. This section shall extend to all repeals, either by express words or by implication, whether the repeal is in the act making any new provision upon the same subject or in any other act." (Emphasis added.) 5 ILCS 70/4 (West 2010).

Under section 4 of the Statute on Statutes, legislative enactments can constitute a substantive change or a procedural change, or they can mitigate the sentence. *People v. Gancarz*, 228 Ill.

2d 312, 319, 321-22 (2008). Although this third category of enactments arises less frequently, our supreme court has found that the language concerning the mitigation of punishment means that a defendant sentenced before the effective date of the sentencing amendment at issue is not subject to the amendment. *People v. Bradford*, 106 Ill. 2d 492, 504 (1985); *People v. Hansen*, 28 Ill. 2d 322, 340-41 (1963); see also *Gancarz*, 228 Ill. 2d at 318 (observing that mitigating the available sentence is not a substantive change).

¶ 31　　As stated, defendant was sentenced well before the effective date of section 5-4.5-105. Accordingly, section 5-4.5-105 does not entitle defendant to any relief.

¶ 32　　　　　　　　　C. Unconstitutional Legislation Regarding Juveniles

¶ 33　　Defendant further asserted in his initial brief that the Juvenile Act's jurisdiction provisions (705 ILCS 405/5-120, 5-130 (West 2010)), as well as the mandatory firearm enhancement (720 ILCS 5/18-2(b) (West 2010)), and the truth-in-sentencing provision, are unconstitutional (730 ILCS 5/3-6-3(a)(2)(ii), (iii) (West 2010)). In his reply brief, however, defendant concedes that his assertion was foreclosed by *People v. Patterson*, 2014 IL 115102. He maintains his position solely to preserve this matter for further appeal. In light of his concession, we need not consider this issue further.

¶ 34　　　　　　　　　　　　　　D. Fines and Fees

¶ 35　　Finally, defendant asserts, and the State concedes, that the $10 mental health charge (55 ILCS 5/5-1101(d-5) (West 2010)), $5 youth division charge (55 ILCS 5/5-1101(e) (West 2010)), the $5 drug court charge (55 ILCS 5/5-1101(f) (West 2010)), the $30 Children's Advocacy charge (55 ILCS 5/5-1101(f-5) (West 2010)), the $15 State Police operations charge (705 ILCS 105/27.3a(1.5) (West 2010)), and the $50 court system fee (55 ILCS 5/5-1101(c) (West 2010)) must be offset by $5-per-day presentence custody credit (725 ILCS 5/110-14(a) (West 2010)). [3] Although defendant also asserts that the $2 State's Attorney records automation fee (55 ILCS 5/4-2002.1(c) (West 2012)) constitutes a fine subject to offset, the State disagrees. We adhere to our prior determination that this charge is not a fine subject to offset. *People v. Reed*, 2016 IL App (1st) 140498, ¶ 16; *People v. Rogers*, 2014 IL App (4th) 121088, ¶ 30.

¶ 36　　With that said, the State concedes that the $2 public defender records automation fee (55 ILCS 5/3-4012 (West 2012)) should be vacated because defendant was represented by private counsel. In addition, defendant asserts that the court improperly assessed against him the $25 Violent Crime Victim Assistance (VCVA) fine (725 ILCS 240/10(c)(1) (West 2010)). The State contends that the $25 fine was miscellaneous, not the VCVA fine, but agrees that the fine should be vacated. Accordingly, we vacate $27 in assessments and order that $115 in assessments be offset with presentence custody credit.

¶ 37　　　　　　　　　　　　　　III. CONCLUSION

¶ 38　　The evidence was sufficient for the trier of fact to find that defendant possessed a firearm at the time of the offense. In addition, recent legislation does not warrant further proceedings. We agree, however, that the fines and fees order must be modified consistent with this decision.

---

[3]Defendant was awarded 805 days of presentence custody credit.

- 8 -

¶ 39        For the foregoing reasons, the judgment is affirmed as modified in part and vacated in part.

¶ 40        Affirmed as modified in part and vacated in part.