2020 IL App (1st) 172683-U

No. 1-17-2683

Order filed October 6, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 6349 |
| | ) | |
| MARQUETTE BUIE, | ) | Honorable |
| | ) | Joseph M. Claps, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Pucinski and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court's denial of postconviction relief following an evidentiary hearing was not against the manifest weight of the evidence.

¶ 2    Defendant Marquette Buie appeals from the circuit court's denial of relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2012)), following an evidentiary hearing. On appeal, defendant contends that the court erred because he was denied the effective

assistance of counsel on direct appeal by appellate counsel's failure to challenge whether the State established beyond a reasonable doubt that he was armed with a dangerous weapon. We affirm.

¶ 3 Following his February 28, 2010 arrest, defendant was charged with armed robbery with a firearm (count I), and armed robbery with a dangerous weapon other than a firearm, *i.e.*, a bludgeon (count II). See 720 ILCS 5/18-2(a)(1), (2) (West 2010).

¶ 4 At a hearing on defendant's motion to quash arrest, Chicago police officer Centeno testified that around 7:30 p.m. on February 28, 2010, he responded to a radio call regarding a person wanted for a robbery, saw a person matching the description, and took that individual into custody.[1] Centeno identified defendant in court as this person. At a show-up, the victim identified defendant as the person who robbed him. The trial court denied the motion and the matter immediately proceeded to a bench trial.

¶ 5 Brandon Rover testified that he was walking to the train station at 8 a.m. on February 19, 2010, listening to his iPod, when defendant started to walk beside him. Rover did not know defendant, but had seen him around the neighborhood. Defendant asked Rover several questions. Rover then entered a store, obtained change for a $10 bill, and went to a bus stop. As Rover waited for the bus, defendant approached Rover's left side, asked a few more questions, and then told him to "come up from [his] pocket." Rover believed this meant that defendant wanted the contents of his pocket. Defendant next said, "it doesn't mean anything to me to kill you." At this point, defendant had his hand in the front of his pants and lifted his shirt, revealing a black firearm tucked in his briefs. Rover saw the firearm's barrel and handle. Defendant's right hand was on the firearm "as if" to show that defendant would kill Rover if he did not comply with defendant's demands.

---

[1] Officer Centeno's first name is not included in the report of proceedings.

¶ 6    Rover gave defendant his iPod and eight dollars. Defendant told Rover he "better never catch" Rover in the area and left. Rover went to school, told his counselor and his mother what happened, and then spoke to the police. On the evening of February 28, 2010, Rover looked out his bedroom window and saw defendant. He told his parents, his mother contacted the police, and he later relocated with officers and identified defendant.

¶ 7    During cross-examination, Rover testified that defendant displayed a firearm, but never fully removed it from his briefs. Defendant did not cock the trigger, and Rover did not touch the firearm. Although Rover did not know the brand names of firearms, he knew what a firearm looked like. Rover explained that his father was in the military, so he knew the difference between a "real gun" and a "fake gun" and was "pretty sure it was real." He was unable to tell the approximate length of the firearm or if it was loaded.

¶ 8    During redirect, the State asked Rover to "show" the trial court with his hands how much of the firearm he saw. The transcript indicates that the trial court interpreted Rover's hand gestures as four to five inches. Rover confirmed that this was the part of the firearm protruding from defendant's waistband, and reiterated that his father was in the military, he had seen firearms before, and the firearm in defendant's briefs appeared to be "real."

¶ 9    The State entered a stipulation to officer Centeno's testimony at the hearing on the motion to suppress.  Chicago police officer Chris Young then testified that he arrested defendant around 7:30 p.m. on February 28, 2010. Defendant gave his home address as 102 South California Avenue in Chicago. Young did not recall defendant stating that he lived in Woodridge, Illinois.

¶ 10    The defense then moved for a directed finding, arguing that the State failed to establish that defendant was the offender. Regarding the firearm, the defense argued that Rover saw the handle

and barrel but did not touch it or know if it was loaded. Moreover, Rover did not even know if it was a "real gun." The defense concluded that because the firearm was not used against Rover in a threatening manner, no evidence established it was dangerous weapon. The defense also noted that because no firearm was recovered, "nothing in evidence" showed that the item was "actually" a firearm. The State responded that Rover had seen defendant around the neighborhood, defendant had his hand on a firearm that was displayed "inches" away from Rover, said it meant nothing to kill Rover, and that this was "threatening." The State noted that Rover had seen firearms before. The trial court entered a directed finding as to armed robbery with a firearm.

¶ 11     In closing argument, the defense argued that nothing indicated that defendant would use the object against Rover in a dangerous manner. The State responded that defendant's hand was on the weapon inches from Rover when defendant said that it meant nothing to kill Rover, and the evidence established that defendant was armed with a dangerous weapon that could be used as a bludgeon.

¶ 12     In finding defendant guilty of armed robbery with a dangerous weapon other than a firearm, the trial court found Rover's testimony clear and convincing, noting that he recognized defendant from the neighborhood. The trial court further found that the object was a bludgeon "because of the manner in which it was used, and threatening to use it to kill someone would, in fact, make it so." The court further found that the description of the item "by itself would be sufficient."

¶ 13     Defendant filed a motion for a new trial, alleging in pertinent part, that he was not proven guilty beyond a reasonable doubt, the State failed to prove every material allegation of the offense, and the court erred in denying the motion for a directed finding as to armed robbery with a

dangerous weapon other than a firearm. The trial court denied the motion and sentenced defendant to eight years in prison.

¶ 14　On direct appeal, defendant contended that his sentence was excessive in light of his youth and other mitigating factors, and that the mittimus must be corrected to reflect the proper amount of presentence custody credit. This court affirmed and corrected the mittimus. *People v. Buie*, 2012 IL App (1st) 111161-U.

¶ 15　On June 18, 2013, defendant filed a *pro se* postconviction petition alleging, in pertinent part, that he was denied the effective assistance of counsel on direct appeal when appellate counsel failed to challenge the sufficiency of the evidence that he was armed with a bludgeon. On July 15, 2013, the circuit court docketed the petition and appointed postconviction counsel. The postconviction proceedings occurred before the same judge who presided at defendant's trial.

¶ 16　On September 15, 2015, postconviction counsel filed a certificate pursuant to Supreme Court Rule 651(c) (eff. Feb. 6, 2013), and an amended postconviction petition alleging that defendant was denied effective assistance when counsel on direct appeal failed to argue that the evidence did not establish his identity beyond a reasonable doubt or that he was armed with a "bludgeon." Regarding the latter issue, the amended petition alleged that the description of the weapon at trial was "sketchy" and that the object was never recovered. The amended petition asserted that although Rover testified that he believed he saw five inches of the barrel of a firearm in defendant's hand, the object was "concealed" in defendant's briefs and never removed or cocked. The amended petition concluded that because the object was never removed from defendant's pants, pointed at Rover, or used as a bludgeon, the evidence at trial failed to establish that it was actually used in a dangerous manner. Additionally, because of the "sparse" physical

details, there was insufficient evidence from which to determine whether the object had dangerous physical characteristics. The State filed a motion to dismiss, which the circuit court denied after hearing argument. The matter proceeded to an evidentiary hearing on September 20, 2017.

¶ 17    At the hearing, postconviction counsel told the court that the defense would proceed on the issue of whether appellate counsel should have challenged the sufficiency of the evidence on direct appeal with respect to the bludgeon. Counsel did not present any witnesses, but relied on the motion for a new trial, defendant's briefs on direct appeal, this court's order on direct appeal, and caselaw. Counsel also asked to make the trial transcript, the amended petition, the reply to the State's motion to dismiss, the transcript from the hearing thereon, and the circuit court's ruling on the motion part of the record.

¶ 18    The State then presented Assistant Public Defender Kieran Wieberg, who represented defendant on direct appeal. Wieberg testified that, after being assigned defendant's appeal, he discussed issues that could be raised with his supervisor including a reasonable doubt argument, a challenge to the court's denial of the motion to suppress, a challenge to the sentence, and the issue of additional sentencing credit. He also considered challenging whether the firearm was a bludgeon, discussed the issue with his supervisor, and conducted research to determine whether it was a "viable" issue. Based upon caselaw, the circumstances under which a firearm could be considered a bludgeon, and the testimony in this case, Wieberg concluded that the argument was unlikely to succeed. Defendant indicated during a phone conversation that he "very strongly" wanted to challenge his sentence, so Wieberg challenged defendant's sentence based upon his youth.

¶ 19    During cross-examination, Wieberg testified that his job was to raise viable issues that, in his analysis, "will give that client the best opportunity at success." Postconviction counsel asked whether he reviewed *People v. Ross*, 229 Ill. 2d 255 (2008), *People v. Thorne*, 352 Ill. App. 3d 1062 (2004), and *People v. Lindsey*, 263 Ill. App. 3d 523 (1994), when researching the bludgeon issue. Wieberg did not specifically recall every case he reviewed, and those specific cases were not in his notes. However, he did not document each case he reviewed. Wieberg acknowledged that defendant was found not guilty of armed robbery with a firearm and that Rover did not describe what the barrel of the item in defendant's pants was made from; rather, Rover testified that it looked like a "real gun." During redirect, Wieberg testified that he reviewed defendant's case for meritorious issues to present on appeal and in his opinion, based on the record, the "bludgeon issue" was not meritorious.

¶ 20    In closing argument, postconviction counsel argued that Wieberg's decision to "rule out" the bludgeon issue was unreasonable and prejudiced defendant. Counsel noted that Wieberg could not say whether he reviewed cases which were "the main foundation" for determining whether an object is a bludgeon. Counsel concluded that because the testimony at trial did not include a description of the object or its composition and the object was never recovered, it could not be inferred the object was a bludgeon. The State responded that postconviction counsel was improperly making a reasonable doubt argument and that appellate counsel was not ineffective merely because he did not remember the cases he reviewed or should have had a "better documenting system."

¶ 21    On October 11, 2017, the circuit court briefly heard additional argument. The court then orally held that defendant failed to establish his claim and dismissed the amended postconviction petition.

¶ 22    On appeal, defendant contends that the circuit court erred in denying him postconviction relief where counsel on direct appeal was ineffective for not arguing that the State failed to establish beyond a reasonable doubt that he was armed with a dangerous weapon.

¶ 23    The Act provides a three-stage process for defendants who allege a substantial deprivation of their constitutional rights. *People v. Cotto*, 2016 IL 119006, ¶ 26. In this case, the petition advanced to a third-stage evidentiary hearing. See 725 ILCS 5/122-6 (West 2012). Following an evidentiary hearing where fact finding and credibility determinations are involved, the circuit court's decision will not be reversed unless it is manifestly erroneous. *People v. Beaman*, 229 Ill. 2d 56, 72 (2008). However, if no new evidence is presented at the evidentiary hearing and the issues presented are pure questions of law, a *de novo* standard of review is applied unless the judge presiding over the postconviction proceeding "has some special expertise or familiarity with defendant's trial or sentencing and that familiarity has some bearing" on the petition's disposition. *People v. English*, 2013 IL 112890, ¶ 23.

¶ 24    In the case at bar, the parties disagree as to the appropriate standard of review. Defendant contends that because no fact-finding or credibility determinations were made at the evidentiary hearing, the circuit court's denial of postconviction relief should be reviewed *de novo*. The State, however, argues that the manifest error standard applies because new evidence was presented at the evidentiary hearing and the circuit court was required to make credibility determinations. The State further posits that deference should be given to the circuit court due to its familiarity with

defendant's trial, as the same judge presided at trial and found that the item defendant possessed could be considered a bludgeon. Moreover, the sole issue at the hearing was the propriety of appellate counsel's conclusion that the court's factual finding could not be successfully challenged on appeal. We agree with the State.

¶ 25     At the evidentiary hearing, appellate counsel's testimony presented the circuit court with new evidence. Moreover, because the judge presiding at the evidentiary hearing also presided at defendant's trial, he was familiar with the evidence at trial and that familiarity had some bearing on the disposition of the postconviction proceeding where defendant challenged the sufficiency of that evidence. Accordingly, the standard of review in this case is whether the circuit court's ruling denying defendant postconviction relief was manifestly erroneous. See *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009) (manifest error exists when the error is clearly evident, plain, and indisputable).

¶ 26     A claim of ineffective assistance of counsel presented in a postconviction petition is judged under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). A defendant must show that counsel's performance was deficient, and that this deficient performance prejudiced him. *Id*. at 687-88. A defendant who claims appellate counsel was ineffective must show both that counsel's failure was deficient and that but for counsel's errors, there is a reasonable probability that the appeal would have been successful. *English*, 2013 IL 112890, ¶ 33. Appellate counsel is not obligated to raise every conceivable issue on appeal, and it is not incompetence for counsel to refrain from raising issues which in counsel's judgment are without merit, unless counsel's appraisal of the merits is patently wrong. *People v. Simm*s, 192 Ill. 2d 348, 362 (2000); see also *People v. Williams*, 209 Ill. 2d 227, 243 (2004) (rather than raise "every conceivable issue on appeal," appellate counsel "exercise[s] professional judgment to select from the many potential

claims of error that might be asserted"). In other words, unless the underlying issue is meritorious, a defendant is not prejudiced by appellate counsel's failure to raise it on direct appeal. *People v. Barrow*, 195 Ill. 2d 506, 523 (2001).

¶ 27 In the case at bar, defendant concludes that it was professionally unreasonable for appellate counsel to fail to challenge the sufficiency of the evidence on direct appeal as to whether he was armed with a bludgeon. Defendant notes that no weapon was recovered and no testimony described the object's composition, weight, or other characteristics.

¶ 28 When a defendant claims that the evidence is insufficient to sustain his conviction, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense proved beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48. Under this standard, all reasonable inferences from the evidence must be allowed in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42. In a bench trial, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, resolving conflicts in the evidence, and drawing reasonable inferences therefrom. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). However, merely because the trier of fact accepted certain testimony or made inferences based on the evidence does not guarantee the reasonableness of those decisions. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). A conviction will be reversed where the evidence is so unsatisfactory, improbable, or unreasonable that there exists a reasonable doubt of the defendant's guilt. *Id*.

¶ 29 To prove defendant guilty of armed robbery in this case, the State was required to show that he knowingly took the iPod and money from Rover by the use of force or by threatening the

imminent use of force while armed with a dangerous weapon other than a firearm, specifically, a bludgeon. 720 ILCS 5/18-2(a)(1) (West 2010).

¶ 30     "Dangerous weapon" is not defined in the armed robbery statute; rather, its definition has been derived from common law. *People v. Hernandez*, 2016 IL 118672, ¶ 12. When determining whether an object is a dangerous weapon, courts have defined three categories of dangerous objects: (1) objects that are dangerous *per se*, such as loaded guns; (2) objects that are not necessarily dangerous, but were actually used in a dangerous manner during the offense; and (3) objects that are not necessarily dangerous but may become dangerous when used in a dangerous manner. *Ross*, 229 Ill. 2d at 275; see also *People v. McBride*, 2012 IL App (1st) 100375, ¶ 42. Our supreme court has recognized "[t]his effort at categorization is nothing more than a recognition of the proper role for the trier of fact" to determine whether an object is sufficiently susceptible for use in a manner likely to cause serious injury. *Ross*, 229 Ill. 2d at 275.

¶ 31     The State may prove that a firearm is a dangerous weapon by showing that it was loaded and operational, or that it was used or capable of being used as a bludgeon. *Id*. at 276. When determining whether a defendant was armed with a dangerous weapon, the trier of fact may make an inference of dangerousness based upon the evidence presented at trial. *Id*.

¶ 32     In the case at bar, the evidence viewed in the light most favorable to the State was sufficient for the trial court to determine that defendant was armed with a dangerous weapon. Rover testified that when defendant lifted his shirt, defendant's right hand was on a firearm that was tucked into his briefs and defendant said, "it doesn't mean anything to me to kill you." Rover acknowledged that defendant never fully removed the firearm from his briefs but was able to describe its color and saw four to five inches of its barrel as well as its handle. Moreover, Rover testified that his

father was in the military and he was familiar with firearms, such that he knew a real firearm from a fake one and believed that defendant had a real firearm. Although defendant did not use the firearm as a bludgeon, the circumstances described by Rover support the inference that defendant was armed with a dangerous weapon based on the description of its length and the manner in which defendant threatened to use it. See citing *People v. Skelton*, 83 Ill. 2d 58, 66 (1980) (finding that "[m]ost, if not all, unloaded real guns and many toy guns, because of their size and weight, could be used in deadly fashion as a bludgeons" and "can properly be classified as dangerous weapons although they were not in fact used in that manner during the commission of the particular offense").

¶ 33 We note that in *Ross* our supreme court held that the trier of fact may make an inference of dangerousness when there is evidence that the object at issue was "used or capable of being used as a club or bludgeon." *Id.*, 229 Ill. 2d at 276; see also *People v. Thorne*, 352 Ill. App. 3d 1062, 1072 (2004) (noting that in cases where a firearm that could not fire bullets was determined to be a dangerous weapon there was either evidence that the firearm was used in a dangerous manner or "the character of the weapon was such that it could conceivably be used as a bludgeon"). Here, as discussed above, the State presented evidence that the object at issue was capable of being used as a bludgeon, such that the trial court could infer that defendant was armed with a dangerous weapon.

¶ 34 Moreover, contrary to defendant's argument on appeal, the fact that the weapon was not recovered is not fatal to the State's case. Courts have consistently held that eyewitness testimony that the offender possessed a firearm, combined with circumstances under which the witness was able to view the weapon, is sufficient to allow a reasonable inference that the weapon was actually a firearm. *People v. Jackson*, 2016 IL App (1st) 141448, ¶ 15; *People v. Davis*, 2015 IL App (1st)

121867, ¶ 12. "Consequently, the State need not present a firearm in order for the trier of fact to find the defendant possessed one." *Jackson*, 2016 IL App (1st) 141448, ¶ 15; see also *People v. Clark*, 2015 IL App (3d) 140036, ¶ 24 ("We hold that the question of whether eyewitness testimony is sufficient to establish that an object is a 'firearm' is a question of fact properly determined by the jury."). Accordingly, the evidence was sufficient for the trial court to find that defendant was armed with a dangerous weapon based Rover's testimony regarding the weapon and the manner in which defendant threatened to use it.

¶ 35    Defendant therefore cannot establish that he was prejudiced by appellate counsel's decision not to challenge the sufficiency of the evidence on direct appeal. See *Barrow*, 195 Ill. 2d at 523 (unless the underlying issue is meritorious, a defendant is not prejudiced by appellate counsel's failure to raise it on direct appeal). As defendant cannot establish that he was denied the effective assistance of appellate counsel, the circuit court's determination that he failed to establish the substantial denial of a constitutional right is not manifestly erroneous. See *English*, 2013 IL 112890, ¶¶ 21, 23. We therefore affirm the circuit court's denial of postconviction relief.

¶ 36    For the forgoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 37    Affirmed.