THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MARK DUNIVANT, Defendant-Appellant.

Second District    No. 79-826

Opinion filed May 6, 1981.

Mary Robinson, Mark Schuster, and Paul J. Glaser, all of State Appellate
Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko, of State's
Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE VAN DEUSEN delivered the opinion of the court:

On April 25, 1979, the defendant, Mark Dunivant, was charged by
information with the offense of armed robbery (Ill. Rev. Stat. 1979, ch. 38,
par. 18—2). Along with Dunivant, the State also charged William Harris
and Robert Box with the same offense. The trial court granted Dunivant's
motion to sever. Box and Harris were subsequently convicted of robbery,
and a fourth man, Albert Gray, who was separately charged, was
acquitted by a jury. The trial court granted the State's pretrial motion in
limine to restrict the defendant's cross-examination of the victim, Patrick
Jones, regarding his residence in the penitentiary at the time of the trial
and any hopes of leniency Jones might have had in return for his testi-
mony on behalf of the State.

Jones was the State's principal witness. A summary of his testimony
follows. A gold Cadillac without license plates occupied by three male
Negroes was one of several cars to enter the Clark gas station at about 11

p.m. on April 11, 1979. *Jones* had a good opportunity to observe all three men and said Box was the driver. He said that on a prior occasion he had identified Harris as a passenger and had not identified Albert Gray as the third man. All three men were in the car when it left the station.

A short time later, while Jones was counting money in the office, Albert Gray came around the back of the building. He entered the office, knocked Jones to the floor, rolled him over and held him by the back of his neck. Then, Gray took the money Jones was counting, ripped the coin changer off his belt, removed the wallet from his pocket and said, "If I didn't give him the keys to the safe, that he was going to blow my shit away." Jones testified that after this threat he heard someone say "No." He thought the voice came from outside but admitted that he was not sure that there was actually a third man and that the voice could have been that of Box, whom the victim observed rifling through the cabinets in the office while Gray held Jones down. Jones acknowledged that at Harris' trial he had said he was "pretty sure" that he saw Harris outside at the time.

Next, Gray forced Jones to get up and walk outside, threatening to break his neck if he ran away. Once outside, Jones broke and ran away to a house on the corner and observed the robbers fleeing over a back fence. He had acknowledged at Harris' trial that he saw two men jump the fence. At the house, he had a woman therein call the police, and he gave them a description of a gold Cadillac with three black males. About 5-7 minutes from the time Jones broke away from the robbers, the police returned to the station with the gold Cadillac that had been in the station earlier.

During cross-examination, Jones testified that he never observed a gun or anything that looked like a gun or other weapon in the possession of either Gray or Box during the robbery. He saw nothing in Gray's hands and no bulge in his pocket, nor did Gray threaten to shoot when Jones ran away. At the end of cross-examination, he testified that he did not see the defendant Dunivant at the service station at any time on the evening in question until the police brought the gold Cadillac back.

Next, the arresting officer testified that, within seconds after receiving a radio broadcast and within 4-5 blocks of the station, he observed a car fitting the description, pursued it and, after it apparently attempted to elude them, stopped it and ordered the occupants out at gunpoint. The driver was Harris, and Dunivant was the passenger in the front seat with Box in the back seat. The coin changer was found on the transmission hump in the front, and a loaded .22-caliber revolver was found where Dunivant had been observed to be leaning forward with his hands on the floorboard between his feet.

The defendant's motion for a directed verdict at the close of the

State's case was denied, and the defendant then rested without presenting testimony. The jury returned a verdict of guilty on the charge of armed robbery, and after a sentencing hearing the trial court sentenced Dunivant to a six-year term of imprisonment. This appeal followed.

The defendant first argues on appeal that even if he was shown to be accountable for the actions of Gray and Box, his conviction must be reduced from armed robbery to robbery because there was no proof that any of the persons present at the time of the offense were armed. The armed-robbery statute provides as follows:

> "§18—2. Armed Robbery. (a) A person commits armed robbery when he or she [takes property from the person or presence of another by the use of force or by threatening the imminent use of force] while he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon." Ill. Rev. Stat. 1979, ch. 38, par. 18—2.

It is the presence of a dangerous weapon during the commission of the offense that is the extra ingredient that changes robbery into armed robbery (*People v. Skelton* (1980), 83 Ill. 2d 58, 64), and it must be established beyond a reasonable doubt by the State (*People v. Binion* (1967), 80 Ill. App. 2d 130, 132). It can be inferred from circumstantial evidence. (*People v. Myatt* (1978), 66 Ill. App. 3d 642, 646; *People v. Rice* (1969), 109 Ill. App. 2d 391, 395; *People v. Harrison* (1935), 359 Ill. 295.) Evidence of some physical manifestation of a weapon is required (*Myatt* (victim saw sunlight reflected off gun butt and felt cylinder against her ribs); *People v. Moore* (1973), 14 Ill. App. 3d 361, 363 (victim saw gun or knife and felt it in her side); *People v. Elam* (1972), 50 Ill. 2d 214, 220 (victim felt hard object in his back which robber said was a gun, and offender apprehended within ten minutes with a knife); *People v. Fultz* (1968), 96 Ill. App. 2d 220, 222 (after defendant inserted his hand in his pocket, victim saw "a point" form); *People v. DuPree* (1979), 69 Ill. App. 3d 260, 264 (victim saw outline of gun in handkerchief when robber announced a "stick-up"); *People v. Thompson* (1976), 35 Ill. App. 3d 773, 775 (victim saw a barrel as robber twice threatened to put a hole in victim's head); *Harrison* at 299 (victim felt cold metallic object pressed against his neck)); or some other evidence is necessary to establish the presence of the weapon at the scene (*Rice*, at 394-95 (victim's throat cut and bystander heard to yell "look out. He has got a razor" as defendant fled); *People v. Larson* (1980), 82 Ill. App. 3d 129 (victim saw a flash and heard a loud crack, M-80 firecrackers and broken glass in display cases found at the scene and hammers found near the scene)).

In the present case, the victim, Jones, testified, and the State concedes, that Jones saw no weapon, part of a weapon, outline of a weapon or gesture indicating possession of a weapon at the time of the robbery.

While Gray made threats to shoot, it was not Gray who was apprehended shortly thereafter in possession of the gun, but rather Dunivant whom Jones admitted he had not observed at the scene. There is other evidence that tends to negate the presence of a gun at the scene of the offense. The robbers did not threaten to shoot Jones if he ran away but to break his neck, and when Jones did break away and flee, so did Gray and his companions.

■■ Because the evidence adduced at trial failed to establish beyond a reasonable doubt that a dangerous weapon was present on or about the persons of the participants in the robbery at the time and place of the offense, the conviction for armed robbery cannot stand.

> "The intent of the more severe punishment provided in [armed robbery] statutes is, of course, to deter the use of dangerous weapons and prevent the kind of violence that often attends the use of a deadly weapon in the perpetration of a robbery." (*People v. Skelton* (1980), 83 Ill. 2d 58, 62.)

While the proof failed to support a conviction for the greater offense of armed robbery, the State did prove all the elements constituting the lesser included offense of robbery, and, if a new trial were not required on another ground, we would reduce the conviction to one for robbery.

Having made this determination regarding defendant's conviction for armed robbery, we do not consider the defendant's contention that the jury instruction concerning armed robbery was erroneous.

Lastly, the defendant argues on appeal that he is entitled to a new trial because the trial court improperly restricted his sixth amendment right to confront witnesses when it granted the State's motion in limine to restrict cross-examination of Patrick Jones concerning hopes of leniency as well as his current residence in the penitentiary. We agree that this was error.

In *Alford v. United States* (1931), 282 U.S. 687, 75 L. Ed. 624, 51 S. Ct. 218, the Supreme Court held that cross-examination of a witness is a matter of right; it is necessarily exploratory because counsel cannot know what will be revealed in cross-examination, and, therefore, counsel need not specify the purpose of the inquiry. Prejudice ensues from the denial of the opportunity to put the witness in his proper setting and test the weight and credibility of the testimony so that the jury can appraise them. The trial court has a duty to protect the witness from questions going beyond proper cross-examination and those which harass, annoy or humiliate the witness, but it is an abuse of discretion and prejudicial error to in limine cut off inquiry on a subject that the defendant has a reasonable right to cross-examine. *Alford*, 282 U.S. 687, 690-91, 75 L. Ed. 624, 627, 51 S. Ct. 218, 219-20.

■■ In *Smith v. Illinois* (1968), 390 U.S. 129, 19 L. Ed. 2d 956, 88 S. Ct. 748, the Supreme Court found the principles enunciated in *Alford* appli-

cable to State prosecutions and said "[t]o forbid this most rudimentary inquiry [of the witness' home and address] at the threshold is effectively to emasculate the right to cross-examination." (*Smith*, at 131.) The Illinois Supreme Court has expressed general disapproval of the practice followed in the instant case of resolving questions of possible bias by in limine motions rather than by jury determinations. (*People v. Eddington* (1979), 77 Ill. 2d 41, 46.) Defendant correctly argues that, despite the prosecutor's averments that no promises of leniency were made and the court's doubts that Jones' testimony could affect the sentence already imposed upon him, the defendant was entitled to inquiry into Jones' expectations or hopes for leniency whether based on fact or imaginary. *People v. Kellas* (1979), 72 Ill. App. 3d 445, 453-54; *People v. Baptiste* (1976), 37 Ill. App. 3d 808, 812.

The State agrees that the restriction on cross-examination constituted error but maintains that it was harmless because it did not prejudice the defendant. The prosecutor claims that immediate apprehension of the defendant in the automobile with the gun and proceeds of the crime, rather than Jones' testimony, convicted the defendant and that the defendant had otherwise been allowed broad cross-examination of Jones. Here, as in *Smith*, the defense did cross-examine Jones at some length but was restricted by the in limine motion. Jones' credibility, as the sole occurrence witness, was extremely critical. *People v. Manzella* (1973), 56 Ill. 2d 187, *cert. denied* (1974), 417 U.S. 933, 41 L. Ed. 236, 94 S. Ct. 2644, cited by the State, where a similar restriction of cross-examination was found to be harmless because the witness' testimony was not critical, is therefore inapposite. "[W]hen the credibility of a witness is in issue, the very starting point in 'exposing falsehood and bringing out the truth' through cross-examination must necessarily be to ask the witness who he is and where he lives" (*Smith*, at 131), and prejudice ensues from the denial of cross-examination that places the witness in his milieu and tests his credibility (*Alford*, at 692).

The denial of the opportunity to cross-examine Jones regarding his residence in the penitentiary at the time of the defendant's trial and any hope of leniency Jones might have had at that time constituted reversible error and requires remanding the cause to the trial court for a new trial on the charge of robbery.

Reversed and remanded.

SEIDENFELD, P. J., and LINDBERG, J., concur.