NO. 4-07-0208

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| DAREN M. LAMPTON, | ) | No. 04CF814 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Heidi Ladd, |
| | ) | Judge Presiding. |

_____

MODIFIED UPON DENIAL OF REHEARING

JUSTICE MYERSCOUGH delivered the opinion of the court:

In May 2004, the State charged defendant, Daren M.
Lampton, with three counts of armed robbery (720 ILCS 5/18-
2(a)(1) (West 2002)), a Class X felony.  Following a November
2004 trial, a jury convicted defendant, and the trial court later
sentenced him to three concurrent terms of 35 years' imprison-
ment.  Defendant appealed, alleging (1) his multiple convictions
for armed robbery violated the one-act, one-crime rule; (2) a new
sentencing hearing was required because the court relied on
multiple armed-robbery convictions in sentencing when only one
conviction was proper; and (3) he was entitled to an additional
day of sentencing credit.  People v. Lampton, No. 4-05-0083
(August 8, 2006) (unpublished order under Supreme Court Rule 23).
This court affirmed defendant's convictions and sentences.  In
November 2006, defendant filed a postconviction petition in which

he alleged both trial counsel and appellate counsel were ineffective and that the Department of Corrections' mandatory-supervised-release provisions were unconstitutional. In February 2007, the trial court found defendant's petition was patently without merit and dismissed the petition. Defendant appeals, alleging his postconviction petition stated the gist of a constitutional claim that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence. We affirm.

## I. BACKGROUND

On May 5, 2004, the State charged defendant by information with three counts of armed robbery (720 ILCS 5/18-2(a)(1) (West 2002)), one count for each of the three bank tellers, stemming from a single bank robbery. Each count alleged defendant "while armed with a dangerous weapon, pepper spray, knowingly took property, being United States currency *** by threatening the imminent use of force." The trial court conducted a jury trial on November 9 and 10, 2004.

Eric Moody testified he is a teller at Central Illinois Bank. On May 4, 2004, while Moody was working as a teller at the bank, defendant walked into the lobby and approached the teller counter. Defendant jumped over the counter and ordered Moody and two other tellers, Seth Fleener and Carrie Jackson, to empty their drawers. Moody said he felt threatened by defendant's conduct. Moody and the other tellers emptied their drawers and

put the money in a black garbage bag defendant was holding. Defendant demanded Moody take him to the cash vault. Moody's supervisor, Amy Powell, was counting a shipment of money the bank had received. Defendant demanded that money. After that money was placed in the black garbage bag, defendant left the vault area, jumped over the counter again, and left the bank. The police apprehended defendant shortly thereafter.

On cross-examination, Moody stated he never saw defendant with a gun or a knife in his hand, and in fact, he never saw defendant with anything in his hand other than the garbage bag. Defendant never told Moody he had any kind of weapon and never swung his arms in an attempt to hit Moody or anybody else. Defendant did not break any objects, throw anything, or have any physical contact with Moody. Moreover, defendant did not threaten Moody.

Seth Fleener, another teller at the bank, testified similarly to Moody about the events during the robbery. Although defendant never presented a weapon, Fleener felt threatened by defendant's conduct. On cross-examination, Fleener stated defendant never pulled weapons or anything out of his pockets, did not try to hit or hurt Fleener, and did not say he had a gun.

Amy Powell was a teller supervisor at Central Illinois Bank on May 4, 2004. Powell's testimony about the robbery was similar to Moody's and Fleener's. Defendant never threatened

Powell with a weapon, but she felt threatened during the robbery.

Jeff Jolley is a Champaign police officer. Jolley responded to a report of a robbery at the bank. Jolley saw defendant running. Jolley pursued defendant and finally apprehended him. When searching defendant, Jolley found a small can of "neutralizer," containing 10% pepper spray. Jolley stated pepper spray can cause extreme pain if a large enough dose is sprayed in your face. The spray causes the tear ducts to swell, tearing, involuntary closure of the eyes, swelling of the mucus membranes, and difficulty breathing. Police departments use the spray "to subdue someone, sort of takes the fight out of them."

Dale Rawdin is a detective for the Champaign police department. Rawdin interviewed defendant at the police station. Defendant indicated he was homeless and down on his luck so he decided to rob a bank. On cross-examination, defense counsel asked Rawdin: "He told you that in his own words he did not have a weapon when he went in, he told you that right?" Rawdin responded, "That's correct." Rawdin also indicated defendant had told him he did not want to hurt anybody during the robbery.

Keith Johnston, a detective with the Champaign police department, assisted Rawdin in the interview of defendant. Johnston took defendant to the hospital after the interview. While at the hospital, defendant told Johnston he "had a can of Mace with him" and that he was going to use it on the tellers if

any of them tried anything.

The State rested its case, and defendant moved for a directed verdict.  The trial court denied defendant's motion.

Defendant testified he was living at a homeless shelter and had been given the pepper spray by a fellow resident for his protection.  Defendant acknowledged he robbed the bank but denied taking the pepper spray into the bank and stated he never threatened anybody.  Instead, he said he left the pepper spray next to the Dumpster in an alley near the bank where he had changed into his disguise and retrieved the spray after leaving the bank.  He testified he never told Johnston he brought the spray to use in case the tellers acted up.

Defendant rested and renewed his motion for directed verdict.  The trial court denied the motion.

The jury convicted defendant of all three counts of armed robbery.  On November 15, 2004, defendant filed a motion for acquittal or other relief.  Defendant argued pepper spray is not a dangerous weapon and insufficient evidence showed defendant used the threat of force to take the money.  On December 20, 2004, the trial court denied the motion and sentenced defendant as stated.  On January 6, 2005, defendant filed a motion to reconsider sentence that the trial court also denied.

This court affirmed defendant's convictions and sentences in his direct appeal, in which he alleged (1) his multiple

convictions for armed robbery violated the one-act, one-crime rule; (2) a new sentencing hearing was required because the court may have relied on multiple armed-robbery convictions in sentencing when only one conviction was proper; and (3) he was entitled to an additional day of sentencing credit. People v. Lampton, No. 4-05-0083 (August 8, 2006) (unpublished order under Supreme Court Rule 23).

On November 29, 2006, defendant filed a pro se postconviction petition. Defendant made several claims trial counsel and appellate counsel were ineffective. Defendant also alleged the Department of Corrections' mandatory-supervised-release provisions were unconstitutional. On February 23, 2007, the trial court dismissed defendant's petition as frivolous and patently without merit.

This appeal followed.

## II. ANALYSIS

On appeal, defendant contends his postconviction petition alleged the gist of a constitutional claim his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence on the ground the State did not prove defendant committed the offense while possessing a "dangerous weapon," an essential element of the crime of armed robbery.

"When a defendant challenges the sufficiency of the evidence, the relevant inquiry is

whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." People v. Woods, 214 Ill. 2d 455, 470, 828 N.E.2d 247, 257 (2005).

## A. To Survive First-Stage Dismissal of a Postconviction Petition Defendant Must Allege the Gist of a Constitutional Claim

In this case, the trial court dismissed defendant's postconviction petition at the first stage. At the first stage, the trial court examines the postconviction petition to determine whether it is frivolous or patently without merit. People v. Edwards, 197 Ill. 2d 239, 244, 757 N.E.2d 442, 445 (2001). If the court determines the petition is frivolous or patently without merit, the court must dismiss the petition. Edwards, 197 Ill. 2d at 244, 757 N.E.2d at 445. "To withstand dismissal at the first stage of postconviction proceedings, a pro se petition for postconviction relief need only contain a simple statement that presents the 'gist of a claim for relief' when nothing in the trial record contradicts that claim." People v. Patton, 315 Ill. App. 3d 968, 972, 735 N.E.2d 185, 189 (2000). "The 'gist' standard is 'a low threshold.'" Edwards, 197 Ill. 2d at 244, 757 N.E.2d at 445, quoting People v. Gaultney, 174 Ill. 2d 410, 418, 675 N.E.2d 102, 106 (1996). To set forth the "gist" of a constitutional claim, the postconviction petition "'need only

- 7 -

present a limited amount of detail'" and need not set forth the claim in its entirety.  Edwards, 197 Ill. 2d at 244, 757 N.E.2d at 445, quoting Gaultney, 174 Ill. 2d at 418, 675 N.E.2d at 106. We review the first-stage dismissal of a postconviction petition de novo.  People v. Little, 335 Ill. App. 3d 1046, 1051, 782 N.E.2d 957, 962 (2003).

### B. To Demonstrate Ineffective Assistance of Appellate Counsel, Defendant Must Show Both That Counsel's Performance Was Deficient and Prejudice Resulted From the Deficiency

Defendant's sole contention on appeal is that he did not receive the effective assistance of appellate counsel because counsel failed to argue the State failed to prove an essential element of the offense of armed robbery beyond a reasonable doubt, i.e., that defendant possessed a "dangerous weapon."  A defendant who argues he received ineffective assistance of counsel must demonstrate both a deficiency in counsel's perfor-mance and that prejudice resulted from the deficiency.  People v. Edwards, 195 Ill. 2d 142, 162, 745 N.E.2d 1212, 1223 (2001), citing Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984).  Claims of ineffective assistance of appellate counsel are measured against the same standard.  People v. Makiel, 358 Ill. App. 3d 102, 105, 830 N.E.2d 731, 737 (2005).

> "A defendant who claims that appellate coun-
>
> sel was ineffective for failing to raise an

issue on appeal must allege facts demonstrating that such failure was objectively unreasonable and that counsel's decision prejudiced defendant. If the underlying issue is not meritorious, then defendant has suffered no prejudice." People v. Enis, 194 Ill. 2d 361, 377, 743 N.E.2d 1, 11 (2000).

## C. The State Proved Defendant Possessed a Dangerous Weapon for Purposes of the Armed-Robbery Statute

As stated, defendant contends he did not possess a "dangerous weapon," within the meaning of the armed-robbery statute, while committing the robbery. Section 18-1(a) of the Criminal Code of 1961 (Criminal Code) states, "A person commits robbery when he or she takes property *** from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-1(a) (West 2002). The section of the armed-robbery statute under which the State charged defendant states, "A person commits armed robbery when he or she violates [s]ection 18-1; and (1) he or she carries on or about his or her person or is otherwise armed with a dangerous weapon other than a firearm." 720 ILCS 5/18-2(a)(1) (West 2002).

"The purpose of the armed[-]robbery statute is to treat more severely a person who commits a robbery while possessing a weapon actually capable of causing serious injury than a person who commits a robbery without possessing such a weapon." People

v. Lindsay, 263 Ill. App. 3d 523, 527-28, 635 N.E.2d 551, 555 (1994). The presence of a dangerous weapon is the extra ingredient that changes a robbery into an armed robbery and must be proved beyond a reasonable doubt. People v. Dunivant, 96 Ill. App. 3d 62, 64, 420 N.E.2d 1110, 1112 (1981). This can be inferred from circumstantial evidence. Dunivant, 96 Ill. App. 3d at 64, 420 N.E.2d at 1112. "[A] conviction for armed robbery may be sustained even though the weapon itself was neither seen nor accurately described by the victim." People v. Coleman, 128 Ill. App. 3d 538, 545, 470 N.E.2d 1277, 1282 (1984).

Because defendant has admitted he in fact robbed the bank, we need only determine whether he did so with a "dangerous weapon." To determine whether there was sufficient evidence defendant committed armed robbery, we must first decide whether sufficient evidence suggested that defendant possessed a weapon during the robbery. Although no victim testified he or she saw a weapon during the robbery, circumstantial evidence suggested defendant possessed the pepper spray while robbing the bank. As stated, defendant's possession of a weapon can be inferred from circumstantial evidence. In this case, Detective Johnston stated defendant told him he took the pepper spray with him into the bank in case he needed to use the spray on the tellers. Defendant denied saying this and maintained he did not take the pepper spray into the bank. "It is the trier of fact's responsibility

to determine the witnesses' credibility and the weight given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from the evidence; we will not substitute our judgment for that of the trier of fact on these matters." People v. Brooks, 187 Ill. 2d 91, 132, 718 N.E.2d 88, 111 (1999). Obviously, the jury believed Johnston's testimony over defendant's. Moreover, the can of pepper spray was found on defendant's person when he was apprehended shortly after the robbery, raising the inference he had it on him during the robbery. Viewing this evidence in the light most favorable to the prosecution, the evidence was sufficient to show defendant possessed the pepper spray during the robbery.

Since we have determined the trier of fact was entitled to conclude defendant possessed the pepper spray during the robbery, we must now determine whether the pepper spray was a "dangerous weapon" within the meaning of the armed-robbery statute (720 ILCS 5/18-2 (West 2002)). While section 18-2 of the Criminal Code does not define the term "dangerous weapon," Illinois courts have defined the term by dividing objects alleged to be "dangerous weapons" into four categories. Lindsay, 263 Ill. App. 3d at 528, 635 N.E.2d at 555. This court recognized these four categories in People v. Elliott, 299 Ill. App. 3d 766, 702 N.E.2d 643 (1998), the only case addressing pepper spray being used as a "dangerous weapon" within the meaning of Illi-

- 11 -

nois' armed-robbery statute.

"The first category contains objects that are dangerous per se, such as knives and loaded guns. People v. Neither, 166 Ill. App. 3d 896, 900, 520 N.E.2d 1247, 1249 (1988). The second category contains objects that are never dangerous weapons. People v. Skelton, 83 Ill. 2d 58, 66-67, 414 N.E.2d 455, 458 (1980) (four-inch plastic toy gun as a matter of law not considered dangerous weapon). The third category contains objects that are not necessarily dangerous weapons but can be used as such. People v. Flores, 245 Ill. App. 3d 149, 158, 613 N.E.2d 1372, 1379 (1993) (un-loaded guns or toy guns made of heavy material fall into this category since they are incapable of shooting bullets but can be used as bludgeons); People v. Robinson, 73 Ill. 2d 192, 201-02, 383 N.E.2d 164, 169-70 (1978) (fingernail clippers with a sharpened file). Whether an object in the third category is a dangerous weapon is a question of fact to be resolved by the trier of fact. Flores, 245 Ill. App. 3d at 158, 613 N.E.2d at 1379. The

fourth category contains objects that could normally fall into the third category, but which were actually used in a dangerous manner in the course of the robbery. See, _e.g._, _People v. de la Fuente_, 92 Ill. App. 3d 525, 535-36, 414 N.E.2d 1355, 1363-64 (1981) (defendants bludgeoned victim with unloaded gun)." _Elliott_, 299 Ill. App. 3d at 772, 702 N.E.2d at 647.

However, our supreme court recently recognized Illinois Appellate Court cases have refined the common-law definition of dangerous objects into these categories but stated "[t]his effort at categorization is nothing more than a recognition of the proper role for the trier of fact." _People v. Ross_, 229 Ill. 2d 255, 275, 891 N.E.2d 865, 878 (2008). The court went on to state that "Illinois cases do not create a mandatory presumption that any gun is a dangerous weapon. Instead, our cases conclude the trier of fact may make an inference of dangerousness based upon the evidence." _Ross_, 229 Ill. 2d at 275-76, 891 N.E.2d at 878. To prove a gun is a dangerous weapon, the State may present evidence the gun was loaded and operable or by presenting evidence the gun was used or capable of being used as a club or bludgeon. _Ross_, 229 Ill. 2d at 276, 891 N.E.2d at 878.

In _Elliott_, the defendant argued that, as a matter of

- 13 -

law, pepper spray is not a dangerous weapon under the armed-robbery statute. Elliott, 299 Ill. App. 3d at 771, 702 N.E.2d at 647. The defendant pointed out he did not spray directly in the victims' faces. Elliott, 299 Ill. App. 3d at 773, 702 N.E.2d at 647-48. This court stated the following in rejecting the defendant's argument:

"Since the victims were lying on the floor at defendant's order, they were not in any position to attack him. It is obvious that defendant used the pepper spray to disable the victims while defendant and his cohorts made their getaway. His argument that he was using the spray in a defensive manner is without merit. In any event, it is irrelevant what defendant's intent was when he used the spray. The statute requires only that he be armed with a dangerous weapon, not that it actually be used.

Pepper spray falls within the fourth category of objects that are actually used in a dangerous manner. Therefore, the question of whether the pepper spray constituted a dangerous weapon in defendant's case was properly one for the trier of fact to deter-

mine.  In addition, we do not find any error in the trial court's factual determination that pepper spray is a dangerous weapon. Although there was testimony that the effects of pepper spray are normally temporary, there is no question that its effects are disabling.  Both victims testified that after the spray was used, they had difficulty breathing and their eyes burned.  One of the victims stated that the spray made her feel nauseated.  They were both temporarily incapacitated by the effects of the spray.  These effects did not wear off completely until several hours after the robbery.  The victims suffered injury and the fact that the injuries were not permanent does not change our conclusion." (Emphasis added.)  Elliott, 299 Ill. App. 3d at 773, 702 N.E.2d at 648.

While Ross seems to eliminate the categorization utilized in Elliott and other appellate court cases addressing what is a dangerous weapon under the armed-robbery statute, this court's decision in Elliott is still instructive on the ultimate issue, whether pepper spray is a dangerous weapon under the armed-robbery statute.  The fact defendant in the case sub judice did not actually use the pepper spray is of no moment.  While the

defendant in Elliott used the pepper spray on his victim, the Elliott court went on to state "[t]he statute requires only that he be armed with a dangerous weapon, not that it actually be used." Elliott, 299 Ill. App. 3d at 773, 702 N.E.2d at 648. Moreover, as stated, a conviction for armed robbery can be sustained even if the victim never (1) saw the weapon during the robbery or (2) accurately described the weapon. Coleman, 128 Ill. App. 3d at 545, 470 N.E.2d at 1282. Here, defendant was armed with pepper spray, a weapon which the police testified is extremely painful if sprayed on the face, causing tearing, swelling, and difficulty breathing. The Elliott court also recognized pepper spray's effects as "disabling." Elliott, 299 Ill. App. 3d at 773, 702 N.E.2d at 648. Here, it can be inferred defendant knew the can of pepper spray actually contained pepper spray from the fact defendant confessed to Detective Johnston he intended to use it to spray in the tellers' faces to debilitate them if necessary. This differentiates this case from cases such as People v. Thorne, 352 Ill. App. 3d 1062, 1073, 817 N.E.2d 1163, 1173 (2004), where the court reduced the defendant's armed-robbery conviction to simple robbery because there was no evidence the BB gun used in the robbery was loaded, capable of being used as a bludgeon, or used in a dangerous manner. Accordingly, we conclude the pepper spray was a "dangerous weapon" under the armed-robbery statute.

Because the defendant's underlying claim that the State

did not prove he committed the robbery while possessing a "dangerous weapon" is without merit, appellate counsel was not ineffective on this basis and the trial court properly dismissed defendant's postconviction petition at the first stage.

### III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $50 statutory assessment as costs of this appeal.

Affirmed.

APPLETON, P.J., and COOK, J., concur.