# Illinois Official Reports

## Appellate Court

---

### *People v. Johnson*, 2018 IL App (1st) 153634

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY JOHNSON, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-15-3634 |
| Filed | May 29, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-10019; the Hon. Charles P. Burns, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Talon K. Nouri, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Matthew Connors, and Elizabeth Reilly, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Presiding Justice Mason and Justice Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1    Terry Johnson and others planned to rob a video game store. After one of his companions used pepper spray to incapacitate the store clerk, Johnson tackled the clerk to the floor and struggled with him. They took the clerk's keys and several video game systems.

¶ 2    Before trial, Johnson requested a conference under Illinois Supreme Court Rule 402 (eff. July 1, 2012) to discuss a possible plea deal. The trial court offered Johnson a 13-year sentence, which Johnson rejected. After a bench trial, Johnson was convicted of armed robbery, and the trial court sentenced him to 16 years of imprisonment.

¶ 3    Johnson argues that he should not have been convicted of armed robbery because the pepper spray was not a "dangerous weapon" within the meaning of the armed robbery statute (720 ILCS 5/18-2 (West 2014)). We reject this claim for the same reasons laid out in *People v. Curry*, 2018 IL App (1st) 153635, a case involving the getaway driver. We also reject Johnson's argument that the trial court improperly increased his sentence from the rejected 13-year offer because nothing in the record makes it "clearly evident" that the sentence was imposed as punishment for rejecting the plea offer and exercising his right to a trial.

¶ 4                                            Background

¶ 5    Before trial, Johnson's counsel requested a Rule 402 conference with the trial court to discuss a potential plea bargain. The State asserted that Johnson and Curry committed the crime with possibly two accomplices and that Johnson "struggled" with a store employee after the employee was pepper sprayed. The State also noted that Johnson had four prior felony convictions (all for robbery or attempted robbery), and two juvenile adjudications, and offered Johnson an 18-year sentence. Johnson's counsel argued that Johnson was not alleged to have pepper sprayed the employee and had not been caught with any of the robbery's proceeds. Counsel also noted that Johnson was 22 years old and had been paroled for his previous felony sentences less than a year before the commission of this robbery. Counsel asked for a sentence of six to eight years. The trial court offered Johnson a sentence of 13 years, which Johnson rejected.

¶ 6    What follows repeats some of the "Background" section in *Curry*, 2018 IL App (1st) 153635. At trial, Alonzo Mitchell, an employee of the Game Stop, described how he was working behind the counter when three men entered, wearing hooded sweatshirts. One man approached the counter and squirted pepper spray on him, another man (later identified as Johnson) went behind the counter and tackled Mitchell, and the first man squirted Mitchell again. The men took Mitchell's store keys and stole several video game systems.

¶ 7    Meanwhile, a coworker who had been hiding in the store's break room called police. An officer, who was nearby at the time of a police radio call for assistance, saw individuals come out of the store and get into a silver Pontiac. The officer followed the Pontiac, which was later found unoccupied and parked on a residential street. The backseat and trunk of the Pontiac contained several video game systems, as well as Mitchell's store keys. On the sidewalk nearby lay a hooded sweatshirt and a can of pepper spray. The car's registration revealed that a woman owned the car; she gave police the name of a potential suspect, Terry Johnson.

¶ 8    Johnson told police that he and some friends robbed the Game Stop store while Deontae Curry acted as getaway driver. Curry told police that his friends had planned only to shoplift

while he waited in the car. The trial court was able to view the store's surveillance video, showing the robbery and Johnson's actions.

¶ 9 Johnson was convicted of armed robbery at a bench trial, with the trial court noting that the evidence showed the robbery was "preplanned" and "very methodical." At sentencing, defense counsel asked the trial court to give Johnson the 13-year sentence originally offered during the Rule 402 conference. The trial court rejected this, stating that it had offered that sentence before trial. At trial, "I hear[d] much more detail with regard to what happened and the sequence of the events, the planned nature of this, all the different steps that were involved here and I heard specifically about your role in this and I believe being one of the major actors in this particular situation." The trial court sentenced Johnson to 16 years.

¶ 10                                              Analysis

¶ 11                            Is Pepper Spray a "Dangerous Weapon"?

¶ 12 Johnson, like his codefendant Curry, argues that he should have been found guilty of robbery, rather than armed robbery, because the pepper spray was not a "dangerous weapon" within the meaning of the armed robbery statute. See 720 ILCS 5/18-2(a)(1) (West 2014) (person commits armed robbery if he or she commits a robbery and carries, or is otherwise armed with, "a dangerous weapon other than a firearm"). We rejected this argument in Curry's appeal. See *Curry*, 2018 IL App (1st) 153635.

¶ 13 The armed robbery statute leaves "dangerous weapon" undefined; the term is a holdover from common law. *People v. Hernandez*, 2016 IL 118672, ¶ 12. Johnson suggests that we should look to the armed violence statute for a definition of "dangerous weapon," but our supreme court already rejected that approach. *Id.* ¶ 16. What constitutes a "dangerous weapon" presents a question of fact, not law. *People v. Ligon*, 2016 IL 118023, ¶ 21. So we will review the claim under the familiar sufficiency of the evidence standard. See *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007) (when reviewing sufficiency of evidence, court considers whether, viewing evidence in light most favorable to State, any rational trier of fact could have found essential elements of crime beyond reasonable doubt).

¶ 14 "Dangerous weapon" includes "any object sufficiently susceptible to use in a manner likely to cause serious injury." *Ligon*, 2016 IL 118023, ¶ 22 (citing *People v. Skelton*, 83 Ill. 2d 58, 66 (1980)). This comprises not just objects that are *per se* dangerous, but objects that can be used in a dangerous manner. *Hernandez*, 2016 IL 118672, ¶ 12; see also *People v. Dwyer*, 324 Ill. 363, 365 (1927) (distinguishing between an object "made for the purpose of destroying life" and an object that is dangerous in "the manner of its use").

¶ 15 Pepper spray would not qualify as "*per se* dangerous," as a loaded handgun would. Rather, pepper spray falls into the category of objects that can be used in a dangerous manner, so it is for the trier of fact to determine whether the pepper spray actually was used that way on Alonzo Mitchell. See *People v. Ross*, 229 Ill. 2d 255, 276 (2008) (reviewing cases and concluding that "the trier of fact may make an inference of dangerousness based upon the evidence"). The trial court determined that it was, noting that the robbers used the pepper spray to immobilize Mitchell from the beginning. This agrees with precedent finding that pepper spray is " 'disabling' " and can " 'temporarily incapacitate[ ]' " its victims. *People v. Lampton*, 385 Ill. App. 3d 507, 514 (2008) (quoting *People v. Elliott*, 299 Ill. App. 3d 766, 773 (1998)). That Mitchell did not suffer a long-term injury from the pepper spray is of no moment. See *People v. Brown*, 87 Ill. App. 3d 368, 370-71 (1980) (effects of incapacitating were temporary,

but whether weapon was "dangerous" for trier of fact to resolve). We defer to the trier of fact.

¶ 16                          Was the Sentence Punishment for Rejecting a Plea Offer?

¶ 17        Johnson next asserts that the trial court punished him for rejecting the plea offer and exercising his constitutional right to a trial. Johnson argues that the three-year increase between the offer and the eventual sentence shows the court's intent. And Johnson deems as pretextual the court's explanation for the disparity.

¶ 18        A trial court may not punish a defendant for exercising his or her right to a trial. *People v. Ward*, 113 Ill. 2d 516, 526 (1986). If it is "evident from the judge's remarks" that the sentence was at least partly a penalty for rejecting a plea offer, we will set aside the sentence. *Id.* But it must be "clearly" evident that the sentence was improper, and we must review the entire record rather than focusing on "a few words or statements." *Id.* at 526-27. We review the trial court's sentencing decision for an abuse of discretion. *Id.* at 526.

¶ 19        The 16-year sentence is not markedly longer than the rejected 13-year offer. So this is not a case like *People v. Dennis*, 28 Ill. App. 3d 74, 78 (1975), where the defendant rejected an offer of 2 to 6 years and received a sentence of 40 to 80 years after trial and "there [was] nothing in the record to indicate why the court found appropriate the imposition of an extremely harsh sentence after [Dennis's] jury trial." The *Dennis* court, which based its ruling on the disparity and the absence of justification, limited its holding to its unusual facts. *Id.*

¶ 20        Nor is this a case like *People v. Young*, 20 Ill. App. 3d 891, 894 (1974), where the defendant rejected a two- to five-year offer and was sentenced to three to nine years of imprisonment, which the trial court justified by stating, " 'you shot the dice and they just came up craps.' " Or *People v. Moriarty*, 25 Ill. 2d 565, 567 (1962), where the trial judge linked the increased sentence to the rejected offer by stating that the defendant's rejection of a plea deal " 'will cost you nine years additional.' "

¶ 21        Here, the trial court stated that the additional detail heard at trial, pertaining to the "planned nature" of the crime, justified the increase. Johnson contends this statement is pretextual, and the State's proffer during the Rule 402 conference and the trial evidence were essentially identical. But the State's bare-bones description of the crime did not include evidence of premeditation. The trial evidence (including Johnson's statement to police and the surveillance video) illuminated that this armed robbery was not a spur-of-the-moment decision but, rather, a planned escapade where each participant had a defined role. On this record, it is not "clearly evident" that the 16-year sentence in any way served as punishment for rejection of the plea offer. We cannot say that the trial court abused its discretion in sentencing Johnson. See *Ward*, 113 Ill. 2d at 526.

¶ 22        Affirmed.