# Illinois Official Reports

## Appellate Court

---

### *People v. McLaurin*, 2018 IL App (1st) 170258

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JASPER McLAURIN, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-17-0258 |
| Filed<br>Rehearing denied | December 11, 2018<br>January 15, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CR-10466; the Hon. Thaddeus L. Wilson, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Steven A. Greenberg & Associates, Ltd., of Chicago (Steven A. Greenberg and Michael P. Hohenadel, of counsel), for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Miles J. Keleher, and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE WALKER delivered the judgment of the court, with opinion.<br>Justice Pierce concurred in the judgment and opinion.<br>Presiding Justice Mikva specially concurred, with opinion. |

**OPINION**

¶ 1   Following a bench trial, defendant Jasper McLaurin was convicted of being an armed habitual criminal and sentenced to seven years' imprisonment. On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt because it failed to present sufficient evidence that he possessed a firearm as defined by the Criminal Code of 2012 (Code) (720 ILCS 5/2-7.5 (West 2014); 430 ILCS 65/1.1 (West 2014)). We agree and reverse defendant's conviction.

¶ 2                                   BACKGROUND

¶ 3   Defendant was tried on one count of being an armed habitual criminal, six counts of unlawful use or possession of a weapon by a felon (UUWF) and four counts of aggravated unlawful use of a weapon (AUUW). At trial, Chicago police sergeant Nicheloe Fraction testified that about 10:30 a.m. on May 25, 2014, she was sitting alone in an unmarked police vehicle conducting surveillance of an apartment building on South Kildare Avenue. Fraction was parked across the street from the building, on the intersecting street. She observed defendant exit the apartment building "carrying a silver handgun." Fraction was about 50 feet away from defendant and nothing was obstructing her view. Defendant walked parallel to the passenger side of Fraction's vehicle, from the rear to the front. He crossed Kildare and entered the rear of a white conversion van, which drove away.

¶ 4   Fraction followed the van. Over her police radio, Fraction gave a description of the van, its license plate number, and a description of the man whom she saw "get into the van with the handgun." Fraction never lost sight of the van. Marked police vehicles arrived and stopped the van. Fraction stopped her vehicle on the driver's side of the van. The occupants of the van exited the passenger side of the vehicle, and thus, Fraction did not observe them as they exited. At the scene, Fraction identified defendant as "the gentleman I saw carrying the handgun into the rear passenger side of the van."

¶ 5   Shortly thereafter, Chicago police officer Jesse Rodriguez asked Fraction to identify a handgun. Fraction described that gun in court as "the same color size of the handgun I saw the gentleman enter the van with." Fraction testified that she did not make any other observations about the handgun. Fraction further testified that during her 12 years of experience as a police officer, she had worked with handguns, was familiar with them, and carried one herself. Despite this familiarity, Fraction could not give any description other than it was chrome and could not state whether the handgun was a revolver or semiautomatic due to the manner in which the gun was being carried.

¶ 6   On cross-examination, Fraction testified that defendant held the gun by gripping the middle of it, with the barrel of the gun visible on one side of his hand and the handle of the gun on the other side. Fraction acknowledged that she did not tell defendant to drop the gun, nor did she attempt to stop the van. She further acknowledged that she did not observe any of the van's doors opening or any windows being rolled down. She never saw anyone remove an object from the van. Police removed three men from the van. About 20 minutes after the van was stopped, Fraction was asked to identify the gun found at the scene. Fraction did not identify the gun as being the item carried by the defendant, but she did opine that the item was the same color and size as the item she saw defendant carry into the van. Fraction did not submit the gun for fingerprint analysis and was unaware if such testing had been done.

¶ 7    Rodriguez testified that he assisted with the stop of the van. Similar to Fraction, Rodriguez stopped his vehicle on the driver's side of the van. Rodriguez exited his vehicle, approached the van, and had a conversation with the driver. The police asked the three men inside the van to exit the vehicle. Defendant was removed from the back part of the van through the double doors that opened in the middle of the van on the passenger side. Fraction confirmed that the officers had stopped the correct vehicle and that defendant was the person she saw with a chrome gun. The officers patted down the three men and searched the vehicle but did not find a weapon. While standing on the driver's side of the van, Rodriguez looked underneath the vehicle and saw a 9-millimeter chrome handgun on the ground. The gun was located near the rear passenger side, almost in the middle of the van. Rodriguez crawled underneath the van, reached out his arm, and recovered the weapon. The gun was loaded with a bullet in the chamber. Defendant was arrested.

¶ 8    On cross-examination, Rodriguez testified that the middle side doors of the van opened outward rather than sliding open. Rodriguez acknowledged that he did not see those doors open prior to the time that defendant and the two other men were ordered out of the vehicle. He noted, however, that from his location on the driver's side of the van, he could not see those doors. The driver exited the driver's side of the van, and defendant and the front-seat passenger exited on the passenger side. Rodriguez acknowledged that he never saw any of those men place or throw anything underneath the vehicle. In addition to Rodriguez and his partner, five other officers responded to the scene. One police vehicle blocked the front of the van and another blocked the rear to prevent it from moving. Rodriguez recovered the gun less than five minutes after the van was stopped. Rodriguez called for an evidence technician to the scene to retrieve the gun, but none were available. He acknowledged that he did not request the gun be tested for fingerprints.

¶ 9    The State presented stipulations that defendant was on parole at the time of this offense and that he had never been issued a firearm owner's identification (FOID) card. The State also presented a stipulation that defendant had a 2011 prior conviction for UUW and a 2006 conviction for aggravated battery with a firearm.

¶ 10    Defendant moved for a directed finding arguing that no officer saw any of the doors of the van open nor did any officer see anyone throw anything underneath the van. Defendant further argued that the gun should have been analyzed for fingerprints. Defendant also pointed out that Fraction could only provide the color and size of the gun, and no further details about the weapon, such as its caliber. The State responded that Fraction was familiar with guns and credibly testified she saw defendant carrying a gun. The State further argued that Rodriguez testified that the gun was recovered from underneath the van in approximately the same location where defendant exited from the vehicle. In addition, the State argued that both the supreme court and the appellate court previously held that it was not necessary for the gun to be recovered to prove it was an actual gun.

¶ 11    The trial court stated that there were many possibilities as to how the gun ended up underneath the van, including a hatch in the middle or back of the van, or someone immediately kicked it there. The court observed that while "recovering a gun would …assist in terms of more credibility with respect to the evidence and the eye-witness testimony," found, however, that it was not what was found under the van but Fraction's observations that were important stating "[the] bottom line is it's based on what the officer saw at the time that she saw the defendant pass by her, and she say…she saw the defendant with a gun." The

- 3 -

court noted that recovering a gun would lend more credibility to the evidence and the eyewitness's testimony. The trial court granted defendant's motion as to the two counts of AUUW that were based on his lack of a concealed carry license and denied the motion as to all of the other counts.

¶ 12    In closing arguments, both parties repeated their arguments above. Defendant further pointed out that there were other police officers in front and back of the van, but no one testified that they saw a door open or saw someone throw a gun underneath the van. The State further argued that the trial court could rely on the circumstantial evidence to make a reasonable inference that defendant placed the gun underneath the van. The State also pointed out that in prior armed robbery cases, both the supreme and appellate courts held that a civilian's testimony regarding a handgun was sufficient to establish that an object was a handgun. Therefore, the testimony from Fraction, a police officer who had experience with handguns, that she observed defendant with a handgun was sufficient to find him guilty.

¶ 13    The trial court found that Fraction's testimony regarding the manner in which defendant held the middle of the firearm was consistent with her being unable to identify exactly what type of firearm he possessed. The court pointed out that Fraction was familiar with firearms based on her work and training. The court found that Fraction testified "clearly and plainly and without impeachment that she saw a firearm, and that the defendant was the person holding that firearm." The court further found that neither Fraction nor Rodriguez would have been able to see anyone open the van door or throw an object out of the van due to their vantage points. It noted that Rodriguez observed the weapon underneath the van close to the door area where defendant, and only defendant, exited from and that the weapon matched the color and size description given by Fraction.

¶ 14    The trial court also pointed out that this court recently held that a witness's unequivocal testimony that a defendant possessed a firearm was sufficient to show that he was armed or possessed a firearm within the meaning of the law. In addition, such testimony combined with circumstances under which the witness was able to view the weapon was sufficient to allow a reasonable inference that the weapon was actually a firearm. Consequently, the court found that the State need not present a firearm in order for the trier of fact to find that the defendant possessed one specifically finding that "[I]n the absence of a recovered firearm, the witnesses' unequivocal testimony that they observed the defendant carrying a firearm is sufficient." The court concluded that Fraction provided "unequivocal testimony" that she observed defendant carrying a firearm on the street and found him guilty of all of the remaining counts. At sentencing, the court merged all of the counts into the armed habitual criminal offense and sentenced defendant to seven years' imprisonment.

¶ 15                                              ANALYSIS

¶ 16    On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt because it failed to present sufficient evidence that he possessed a firearm as defined by the Code (720 ILCS 5/2-7.5 (West 2014)). See also 430 ILCS 65/1.1 (West 2014). Defendant maintains that Fraction's testimony was not sufficient proof to sustain his conviction because she was unable to describe the firearm with any detail beyond its silver color. He also asserts that her testimony did not address the statutory requirement that the gun be a firearm as defined by statute. Defendant further claims that the weapon recovered from underneath the van was irrelevant based on the trial court's comment that its guilty

finding was based on Fraction's observations when defendant passed by her. He argues, however, that there was no evidence that he, or anyone else, tossed the gun under the van.

¶ 17 The State responds that Fraction's unequivocal testimony that she observed defendant holding a firearm was, alone, sufficient to prove he possessed a firearm. The State further argues that Fraction's testimony was supported by additional evidence, including her identification of the recovered gun as having the same color and size as the firearm she saw defendant holding, and Rodriguez's testimony that he recovered a chrome gun from the area underneath the van that was closest to the area where defendant exited that vehicle. The State asserts that it was reasonable for the trial court to infer that defendant placed the gun under the van as he exited.

¶ 18 When defendant claims that the evidence is insufficient to sustain his conviction, this court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense proved beyond a reasonable doubt. *People v. Brown*, 2013 IL 114196, ¶ 48 (citing *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). This standard applies whether the evidence is direct or circumstantial and does not allow this court to substitute its judgment for that of the fact finder on issues involving witness credibility and the weight of the evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). Under this standard, all reasonable inferences from the evidence must be viewed in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42.

¶ 19 In a bench trial, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, resolving conflicts in the evidence, and drawing reasonable inferences from therein. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). However, merely because the trier of fact accepted certain testimony or made inferences based on the evidence does not guarantee the reasonableness of those decisions. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). A conviction will be reversed where the evidence is so unsatisfactory, improbable, or unreasonable that there exists a reasonable doubt of the defendant's guilt. *Id.*

¶ 20 To prove defendant guilty of being an armed habitual criminal in this case, the State was required to show that he knowingly or intentionally possessed a firearm, after having been previously convicted of UUWF in case No. 10-CR-12841 and aggravated battery with a firearm in case No. 05-CR-2372. 720 ILCS 5/24-1.7(a) (West 2014). To prove defendant guilty of the UUWF charges, that State had to prove that he knowingly possessed a firearm or ammunition on his person, after having been previously convicted of either of the above felony offenses. *Id.* § 24-1.1(a). To prove defendant guilty of the AUUW charges, the State had to show that he knowingly carried a handgun, pistol, or revolver on his person while he was on a public street, was not on his own land or in his own abode, and he did not have a valid FOID card. *Id.* §§ 24-1.6(a)(1), (a)(3)(C); (a)(2), (a)(3)(C).

¶ 21 The legislature has defined what a "firearm" is. Section 2-7.5 of the Code adopted the definition of "firearm" provided in section 1.1 of the Firearm Owners Identification Card Act. See *id.* § 2-7.5; 430 ILCS 65/1.1 (West 2014). A "firearm"

> "means any device, by whatever name known, which is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas; excluding, however:

(1) any pneumatic gun, spring gun, paint ball gun, or B-B gun which expels a single globular projectile not exceeding .18 inch in diameter or which has a maximum muzzle velocity of less than 700 feet *per se*cond;

(1.1) any pneumatic gun, spring gun, paint ball gun, or B-B gun which expels breakable paint balls containing washable marking colors;

(2) any device used exclusively for signalling or safety and required or recommended by the United States Coast Guard or the Interstate Commerce Commission;

(3) any device used exclusively for the firing of stud cartridges, explosive rivets or similar industrial ammunition; and

(4) an antique firearm (other than a machine-gun) which, although designed as a weapon, the Department of State Police finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon." 430 ILCS 65/1.1 (West 2014).

¶ 22    The plain language of the statute clearly states that only a device, regardless of what it is called, that is designed to expel a projectile(s) by the action of an explosion or the expansion of gas or the escape of gas is a "firearm," and that other "guns" are not "firearms," the possession of which are prohibited under the statutory provisions at issue in this case. In this case, the trial court specifically stated that its finding was based on the observation of defendant by Sergeant Fraction as defendant walked down the street. The gun that Rodriguez recovered from underneath the van was not introduced at trial. At least six police officers were on the scene at the time that defendant and the other two men were removed from the van. However, there was no testimony that anyone observed defendant or one of the men discard the gun under the van. It is unknown how the gun came to be located there. Consequently, the trial court found that Rodriguez's testimony regarding the recovered gun was not relevant to its finding that defendant illegally possessed a firearm. The court expressly found that the possessory offense was based solely on Fraction's observations of defendant when he walked past her vehicle, and that her testimony alone that she observed him in possession of a gun at that time was sufficient to find defendant guilty.

¶ 23    We acknowledge that in several armed robbery cases, when determining whether an actual "firearm," as defined by the statute, was used during the offense, this court has held that "[u]nder this broad definition, unequivocal testimony that the defendant held a firearm constitutes circumstantial evidence sufficient to show the defendant was armed within the meaning of the statute." *People v. Jackson*, 2016 IL App (1st) 141448, ¶ 15; see also *People v. Fields*, 2017 IL App (1st) 110311-B, ¶ 36. In *Jackson*, we pointed out that "courts have consistently held that eyewitness testimony that the offender possessed a firearm, combined with circumstances under which the witness was able to view the weapon, is sufficient to allow a reasonable inference that the weapon was actually a firearm." *Jackson*, 2016 IL App (1st) 141448, ¶ 15 (and cases cited therein). Consequently, our supreme court has held that in cases involving offenses such as armed robbery and aggravated vehicular hijacking, the State is not required to present a firearm in order for the trier of fact to find that the defendant possessed one. See *People v. Washington*, 2012 IL 107993, ¶ 36 (holding that the jury could reasonably infer the defendant possessed a real gun based on the victim's unequivocal testimony and the circumstances under which he was able to view the gun); *People v. Wright*,

2017 IL 119561, ¶¶ 76-77 (applying the rationale from *Washington* to reach the same disposition).

¶ 24 We find these armed robbery cases distinguishable from the case at bar, which involves only an act of mere possession. In armed robbery cases, the underlying offense is robbery, the forcible taking of another's property. To prove robbery, there is no requirement to prove that a firearm was used in the taking. *People v. Lampton*, 385 Ill. App. 3d 507, 511-12 (2008). Use of a firearm during the course of a robbery is an aggravating factor that if proven, increases the severity of the crime and elevates the penalty. *Id.* at 512. As such, circumstantial evidence may be used to create an inference that a firearm was used in the course of the robbery sufficient to establish the aggravating factor to support the more serious offense of robbery while armed with a firearm. *Id.* That is not the case with possessory firearm offenses where the item possessed cannot be inferred from circumstantial evidence but must be proven beyond a reasonable doubt to be a firearm as defined by the statute. *People v. Crowder*, 323 Ill. App. 3d 710, 712 (2001). Armed robbery cases usually involve the offender pointing a gun and ordering the victim to relinquish money and valuables. There is a threat that if the victim does not comply, the defendant will shoot the victim. For example, in *Washington*, the defendant pointed a gun at the victim's head and forced his way into the victim's delivery truck with an accomplice. *Washington*, 2012 IL 107993, ¶ 10. The defendant kept the gun pointed at the victim's head, ordered him to sit on a safe between the seats and not to move as the accomplice drove the van, *and took* the victim with them. *Id.* Similarly, in *Wright*, the codefendant entered a restaurant, revealed a black semiautomatic gun tucked into the waistband of his pants, stated that it was a robbery, and ordered the manager to take him to the office. *Wright*, 2017 IL 119561, ¶ 9. While walking, the manager felt something sharp against his back that he believed was a gun. *Id.* ¶ 10. In the office, the codefendant ordered the manager to open the safe and give him the money inside. *Id.* In both cases, although no gun was recovered, our supreme court found that, given the unequivocal testimony of the victims and the circumstances under which they viewed the gun, the juries could reasonably infer the defendants possessed real guns. *Washington*, 2012 IL 107993, ¶ 36; *Wright*, 2017 IL 119561, ¶¶ 76-77.

¶ 25 In *Crowder*, 323 Ill. App. 3d at 712, we affirmed the dismissal of an indictment for unlawful possession of a firearm where the State destroyed the firearm before the defendant had an opportunity to examine it. The State argued that the trial court was in error when it dismissed the indictment because the State could not prove the firearm was operable. We found that

> "[e]ven if the State did not have to prove the firearm was operable, it still had to prove that it was a *firearm*. As defendant points out, for all we know, the 'gun' seized from defendant could have been a toy, a nonfunctioning replica, or a 'piece of wood or soap.' Without being able to inspect the weapon and examine it and its outward appearance, defendant would not be able to refute in any meaningful way the State's contention that it was a firearm." (Emphasis in original.) *Id.*

Absent proof, either by inspection or analysis or by other verifiable means, that the item possessed is a device that is designed to expel a projectile or projectiles by the action of an explosion, expansion of gas, or escape of gas, there is no basis to determine whether the item is a firearm, an *exempted* antique, B-B gun, "a toy, a nonfunctioning replica, or a piece of wood or soap."

¶ 26　　The trial court was clear that defendant's conviction is based solely on Fraction's testimony that from 50 feet away she observed him walking on the street holding what appeared to be a gun in his hand. She testified that defendant held the gun by gripping the middle of it, with the barrel visible on one side of his hand and the handle on the other side. Consequently, Fraction was unable to provide any details about the gun other than its color. Fraction provided no testimony that would remotely establish beyond a reasonable doubt that the object she observed in defendant's hand met the statutory definition of a "firearm." There was no evidence that what she observed was, in fact, a device "designed to expel a projectile" or that the item in his hand was an item specifically exempted under the statute, like a B-B gun or an antique. 430 ILCS 65/1.1 (West 2014). Therefore, reasonable doubt existed as to whether the object she observed was an item specifically excluded from the definition of a "firearm," such as a B-B gun or pneumatic gun. *Id.*

¶ 27　　We hold that the State failed to meet its burden to prove beyond a reasonable doubt possessory firearm offenses where there was no evidence that the item observed in the defendant's possession was a device "designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas," as defined by the statute. *Id.*

¶ 28　　Here, we find that Fraction's testimony that she observed defendant in possession of an item that she believed was a firearm, standing alone, was not sufficient to sustain defendant's conviction. There was no evidence that the item she observed met the statutory definition of a firearm. Accordingly, we find that the State failed to prove defendant guilty of being an armed habitual criminal, UUWF, and AUUW, and reverse his conviction.

¶ 29　　When a conviction is reversed based upon insufficient evidence, the double jeopardy clause prohibits the State from retrying the defendant, and the only remedy that is appropriate is a judgment of acquittal. *People v. Williams*, 239 Ill. 2d 119, 133 (2010).

¶ 30　　　　　　　　　　　　　　　　CONCLUSION

¶ 31　　For these reasons, we reverse the judgment of the circuit court of Cook County and enter a judgment of acquittal.

¶ 32　　Reversed.

¶ 33　　PRESIDING JUSTICE MIKVA, specially concurring:

¶ 34　　I join in all aspects of this opinion, other than the court's suggestion (*supra* ¶¶ 23-24) that the evidence needed to prove the illegal possession of a firearm is somehow different than the evidence needed to prove that a defendant possessed a firearm during a robbery. In both situations the State is required to prove beyond a reasonable doubt that what the defendant possessed was a firearm, as defined by the statute. See *supra* ¶ 21. And in both situations circumstantial evidence, if strong enough, may be relied upon to prove this necessary fact. Our supreme court has repeatedly emphasized that "a criminal conviction may be based solely on circumstantial evidence" (*People v. Brown*, 2013 IL 114196, ¶ 49 (citing *People v. Wheeler*, 226 Ill. 2d 92, 120 (2007), and *People v. Hall*, 194 Ill. 2d 305, 330 (2000))) and that "the same standard of review applies whether the evidence is direct or circumstantial" (*id.* (citing *People v. Cooper*, 194 Ill. 2d 419, 431 (2000))).

¶ 35　　　I concur totally in the court's conclusion that, in this case, Sergeant Fraction's testimony did not "remotely establish beyond a reasonable doubt that the object she observed in defendant's hand met the statutory definition of a 'firearm.' " *Supra* ¶ 26. And I share the court's concern that defendants could be found guilty of serious felonies based on conclusory testimony that a "firearm" was involved, with no evidence to prove that the object observed met the statutory definition of a "firearm."

¶ 36　　　This concern applies equally where a defendant is subject to a firearm enhancement that increases the penalty for a crime by 15 years or more. *People v. Jackson*, 2016 IL App (1st) 141448 ¶ 1; *People v. Fields*, 2017 IL App (1st) 110311-B, ¶ 51. As we noted in Fields, "contrary to [the defendant's] assertion that the State must prove the gun is a firearm by direct or physical evidence, unequivocal testimony of a witness that the defendant held a gun is circumstantial evidence sufficient to establish that a defendant is armed during a robbery." *Fields*, 2017 IL App (1st) 110311-B, ¶ 36. What distinguishes this case from *Fields* and *Jackson* is not the type of crime charged but the quality of the evidence. For all of the reasons laid out convincingly by the court, the evidence relied on by the State in Mr. McLaurin's case is simply insufficient to prove that the object Sergeant Fraction testified that she saw him holding met the statutory definition of a "firearm," *i.e.*, that it was a weapon "designed to expel a projectile or projectiles by the action of an explosion, expansion of gas or escape of gas," not falling within any statutory exclusion.